**UNITED STATES of America, Plaintiff,**

v.

**AN UNDETERMINED NUMBER OF DEFENDANTS, et al., Defendants.**

**Civ. A. No. 91–2412–JWL.**

United States District Court, D. Kansas.

Nov. 23, 1994.

---

**908**

Robert A. Olsen, Office of U.S. Atty., Kansas City, KS, for plaintiff U.S.

John C. Monica, Shook, Hardy & Bacon, Kansas City, MO, Ronald L. Bodinson, Timothy M. O'Brien, Shook, Hardy & Bacon, Overland Park, KS, Donald E. Segal, Bruce F. Mackler, Baker & Hostettler, Washington, DC, for Clinical Reference Laboratory, Inc., et al.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this case, claimant Clinical Reference Laboratory (CRL) prevailed before the Tenth Circuit on its contention that the specimen containers used by it to test for the Human Immunodeficiency Virus Type–1 (HIV–1) were not class III devices requiring premarket approval under the Federal Food, Drug, and Cosmetic Act (FDCA). This matter is presently before the Court on CRL's motion under the Equal Access to Justice Act (EAJA) for attorneys' fees and reimbursement of expenses (Doc. # 73). Because this Court believes that the government's position was "substantially justified," CRL's motion is denied.

### I. Background

This dispute arose when CRL, a Kansas corporation that performs in-house laboratory testing for insurance risk assessment purposes, began using a risk assessment protocol for HIV–1 using saliva and urine specimens. After learning of CRL's testing, the Food and Drug Administration (FDA) issued a letter of warning, stating that such conduct violated the FDCA, 21 U.S.C. § 301 et seq. CRL then filed an action for declaratory and injunctive relief against the FDA, Civil Action No. 91–2313, seeking an order that such conduct was beyond the FDA's regulatory control. On October 29, 1991, the United States initiated a seizure action against CRL, Civil Action No. 91–2412, in which it confiscated various items used by CRL in its HIV–1 testing procedures.

On April 10, 1992, this Court dismissed CRL's lawsuit for declaratory and injunctive relief as not ripe for decision. *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F.Supp. 1499, 1504 (D.Kan.1992). The Court also granted summary judgment for the FDA in the seizure action. *Id.* at 1511. The Court held that CRL had introduced "new" devices into interstate commerce without the premarket approval required by the FDCA. *Id.* at 1510–11. The FDA asserted, and this Court determined, that two separate legal theories supported this conclusion. First, according to the statutory language of the FDCA and its accompanying regulations, CRL's relabeling and repackaging constituted manufacture of a new device (the manufacturing theory). *Id.* Second, under the FDCA's interpretive case law, CRL's new use of the specimen containers caused them to be characterized as new devices (the use theory). *Id.* at 1511.

In the wake of this decision, the government filed a motion for an order of condemnation and destruction of the seized items. CRL agreed on September 2, 1992 to allow the government to dispose of the seized materials. (Letter from Timothy M. O'Brien to Robert A. Olsen, September 2, 1992.) This

Court ordered the destruction of the materials on October 20, 1992.

On December 19, 1992, CRL appealed the grant of summary judgment to the government. The Tenth Circuit, while affirming that the specimen containers were devices for FDCA purposes, reversed this Court's conclusion that the containers were new devices requiring premarket approval. *United States v. An Undetermined Number of Unlabeled Cases,* 21 F.3d 1026, 1029 (10th Cir. 1994). Focusing exclusively on the use theory, the Tenth Circuit reasoned that CRL's testing protocols, rather than creating a new use for the container, merely subjected the specimen carried by the container to new tests. *Id.* Consequently, the specimen containers were not new devices requiring premarket approval. *Id.*

Based on this result, CRL, on August 9, 1994, filed a motion seeking an award of attorneys' fees and reimbursement for the seized and destroyed items. CRL bases these requests on the EAJA, 28 U.S.C. § 2412.

## II. *CRL's Request for Attorneys' Fees*

The EAJA provides, in relevant part, that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified...." 28 U.S.C. § 2412(d)(1)(A) (1988). Throughout the course of this litigation, the FDA has maintained that the specimen containers were class III devices requiring premarket approval. CRL Memorandum in Support at 5; Government's Suggestions in Opposition at 3. Drawing from the appellate court's discussion of the FDA's argument, CRL argues

that the FDA's position is "contrary to common sense and fallacious" and, therefore, not substantially justified. CRL Memorandum in Support at 5–6. Not surprisingly, the government raises numerous challenges to CRL's motion. Primarily the government argues that CRL's fee request should be denied for two reasons: first, because CRL has not established that it is eligible to receive fees under the EAJA, and second, because the government's position was substantially justified.[1] Government's Suggestions in Opposition at 9–10, 13–24. The court, while disagreeing with the first argument, concurs with the second and holds for the government.

### A. *Eligible Parties Under the EAJA*

Contrary to the government's assertion, CRL has established that it is an eligible party under the EAJA. To qualify for an award under the EAJA, a corporation must show that, at the time the civil action was filed, its net worth did not exceed $7,000,000 and it had no more than 500 employees. 28 U.S.C. 2412(d)(2)(B). With its reply memorandum, CRL submitted an amended affidavit stating that CRL met both criteria at the time the civil action was filed. As Judge O'Connor recognized in *Hill v. United States,* 819 F.Supp. 932, 933 (D.Kan. 1993), an uncontroverted affidavit is sufficient evidence of eligibility under the EAJA. Accordingly, CRL would qualify for a fee award if the government's position were not substantially justified.

### B. *The Government's Burden of Proof*

Under the EAJA, the government bears the burden of showing that its position is substantially justified. *Hadden v. Bowen,* 851 F.2d 1266, 1267 (10th Cir.1988). To do so, the government must prove that its case had a reasonable basis in law and in fact.[2]

---

**1.** The government also disputes the amount of fees CRL could recover under the EAJA. This opinion's conclusion that the EAJA does not authorize an award of attorneys' fees or a reimbursement for seized items obviates the need to consider the proper method for determining the amount of an award under the EAJA.

**2.** That this Court originally found for the government is not determinative of substantial justifica-

tion. *Pierce v. Underwood,* 487 U.S. 552, 569, 108 S.Ct. 2541, 2552, 101 L.Ed.2d 490 (1988). Conversely, that the government ultimately lost the case does not indicate that its position was not substantially justified; nor does a loss coupled with a court's critical comments establish entitlement to fees. *Id.; United States v. 2116 Boxes of Boned Beef,* 726 F.2d 1481, 1488 (10th Cir.1984).

*Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. In the Tenth Circuit, meeting this reasonableness standard requires that the government prove three things: a reasonable basis for the facts asserted; a reasonable basis in law for the legal theory proposed; and support for the legal theory by the facts alleged. *Harris v. Railroad Retirement Bd.,* 990 F.2d 519, 520–21 (10th Cir.1993). The government's position satisfies these criteria.

### C. *The Government's Arguments*

The facts in this case were substantially undisputed. The case largely revolved around how the law should be applied to those facts. Furthermore, this Court initially decided the case by granting the government's motion for summary judgment. *Clinical Reference Laboratory, Inc.,* 791 F.Supp. at 1511. Accordingly, the Court examined the facts in the light most favorable to CRL. *Id.* at 1505. Therefore, for EAJA purposes, there is no question that a reasonable basis exists for the facts asserted by the government.

■ The government's legal theory was that, under the FDCA, CRL's specimen containers constitute class III devices for two reasons, either of which standing alone would be conclusive: first, CRL initially manufactured the devices after 1976, and second, CRL used the containers in a new manner. This court believes that each legal theory has a reasonable basis. Each is supported by the facts alleged. Each alone, moreover, would be a sufficient basis on which to deny CRL's request for attorneys' fees because the EAJA requires the government's position to be substantially justified, not that each theory advanced in support of that position be substantially justified. 28 U.S.C. § 2412(d)(1)(A).

### 1. *The "Manufacturing" Theory*

■ This Court's initial holding for the government relied primarily on the manufacturing theory. Under the plain language of the FDCA and its interpreting regulations, devices initially manufactured after 1976 are automatically classified as class III unless the manufacturer takes certain proactive steps. Congress entitled 21 U.S.C. § 360c(f) as "Initial classification and reclassification of certain devices." Under subparagraph (1), a device intended for human use that is introduced into interstate commerce after 1976[3] is classified as class III unless (A) the device is of a type previously classified as class I or II and the FDA has made a finding that the device is substantially equivalent to the previously classified device; or (B) the FDA has issued an order reclassifying the new device into class I or II. 21 U.S.C. § 360c(f)(1). A class III device requires premarket approval by the FDA unless the manufacturer applies for an exemption under section 360j(g). 21 U.S.C. § 360e(a)(2). Any device marketed without the necessary premarket approval is adulterated, 21 U.S.C. § 351(f)(1)(B), and subject to seizure. 21 U.S.C. § 334(a). The statute therefore provides a legal basis to conclude that a device produced by a manufacturer for the first time receives a class III designation.

Under the FDCA, "repackaging or otherwise changing the container" constitutes manufacture. 21 U.S.C. § 360(a)(1); 21 C.F.R. § 807.3(d). CRL first began relabeling and repackaging specimen containers in 1989. *Clinical Reference Laboratory, Inc.,* 791 F.Supp. at 1510–1511 (citing CRL's Memorandum in Support of Summary Judgment, Statement of Fact No. 17, 18). Therefore, the FDCA classifies the specimen containers as class III devices unless CRL obtained one of the following: a substantial equivalency order from the FDA through section 360(k); an order reclassifying the

---

**3.** Each time a different manufacturer produces a device for the first time, that manufacturer introduces the device into interstate commerce and that manufacturer's version of the device receives an initial class III designation. Title 21 C.F.R. § 807.81(a)(2) requires each person covered by section 807.20 to seek premarket approval for any device that person produces for the first time. Section 807.20 reaches any owner or operator engaged in the "manufacture, preparation, propagation, compounding, assembly, or processing of a device intended for human use." "Repackaging or otherwise changing the container" constitutes manufacture under the FDCA. 21 U.S.C. § 360(a)(1); 21 C.F.R. § 807.3(d).

device as class I or II through the procedure in section 360c(f)(2); premarket approval through the application process described in section 360e(c); or an exemption from pre-market approval as provided for by section 360j(g)(2). Each of these options requires initiation by the manufacturer. CRL failed to pursue any. Accordingly, the facts alleged support the legal theory advanced by the government: the FDCA initially classifies CRL's devices as class III. On this basis alone, the Court would deem the government's position to be substantially justified.[4]

### 2. The "Use" Theory

The government's second argument, that the new use to which CRL put the specimen containers caused the creation of a new device, derives from case law. As noted, the Tenth Circuit rejected this argument, although without distinguishing the government's authority, because it concluded that the specimen container's use remained to carry samples in a sealed environment. *See An Undetermined Number of Unlabeled Cases*, 21 F.3d at 1029. Nevertheless, the case law provides a reasonable basis in law for the government's argument. Because the uncontroverted facts support the legal theory, the government's use theory is substantially justified.

In *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132, 137 (3rd Cir.1973), the Third Circuit stated, "[t]he newness of a drug within the meaning of the Act ... may arise by reason of a new or different recommended use for the drug even though the same drug may not be a new drug when used for another disease." Analogized to the devices at issue in this case, a specimen container may reasonably be considered a new device when used to carry, for example, a blood specimen versus when used to carry other samples. The FDA may reasonably conclude that the safety and effectiveness of a specimen container depend on the characteristics of the

sample being transported or what might be done with it. More room for error in "the ability to hold and preserve the integrity of a specimen," *An Undetermined Number of Unlabeled Cases*, 21 F.3d at 1029, might be tolerated if the sample is to be tested for one purpose rather than another. CRL's own decision to repackage the specimen containers may reflect, in part, this concern. Accordingly, a reasonable basis in law exists for the government's argument that CRL's new testing protocol equates to a new use that causes the specimen containers to be classified as class III devices.

Finally, CRL began using its testing protocols in 1989. *Clinical Reference Laboratory, Inc.*, 791 F.Supp. at 1502. The facts therefore support the government's theory that CRL used the devices in a "new" way. The Tenth Circuit disagreed with this conclusion and, in so doing, interpreted "use" more narrowly than the government advocated. *See An Undetermined Number of Unlabeled Cases*, 21 F.3d at 1029. Of course, that was well within the appellate court's province, but such a conclusion does not mean that the government's theory, even if wrong, is not substantially justified.

### D. Conclusion Regarding the EAJA Fee Request

Both of the government's arguments supporting the seizure action are substantially justified within the meaning of the EAJA. A reasonable basis exists for the facts alleged. The statutory language, accompanying regulations, and interpreting case law provide a reasonable basis in law for the government's legal theories. Finally, the facts of this case support each theory. Accordingly, CRL's motion for attorneys' fees under the EAJA is hereby DENIED.

### III. CRL's Request for Reimbursement for Seized Items

In addition to attorneys' fees, CRL seeks reimbursement for the cost of the materials

---

4. In its Reply Memorandum (Doc. #79), CRL appears to concede that the Tenth Circuit did not directly address the manufacturing theory. CRL Reply Memorandum at 13. Although CRL's argument that the appellate court's "finding that the cups are not Class III devices necessarily entails a finding that CRL is not a new manufacturer," *id.*, may be correct, the absence of any analysis on that point in the appellate opinion and the absence of any argument by CRL in its motion papers here that demonstrates the "fallacy" of the manufacturing theory leads this Court to conclude that the government, even if wrong, was substantially justified based on this Court's own analysis of that theory.

seized by the FDA and then destroyed. CRL maintains that these costs are recoverable under the EAJA as expenses incurred in a civil action.[5] This Court finds CRL's claim without merit.

This Court need not decide whether the costs of the seized materials are expenses recoverable under the EAJA. As indicated above, the government's position was substantially justified. Therefore, the EAJA provides no basis for any award to CRL. CRL's request for reimbursement must therefore be DENIED.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** claimant's motion for attorneys' fees and reimbursement of expenses (Doc. # 73) is denied.

**IT IS SO ORDERED.**

---

**5.** CRL indicated in its Memorandum in Support that another ground for recovery exists. Nowhere in that Memorandum or elsewhere, however, has CRL articulated what this other ground might be.