PCI/RCI, a Joint Venture, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–575C.

United States Court of Federal Claims.

May 14, 1997.

Stephen A. Melcher, Minneapolis, MN, for plaintiff.

Miguel A. Serrano, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Leigh Ann Holt, General Services Administration, Denver, CO, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on plaintiff's application for attorneys' fees and expenses pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412 (1994). The court must decide whether defendant's position in this dispute was substantially justified.

## FACTS

The facts relevant to this pre-award bid protest, in which plaintiff sought injunctive relief restraining the Government from awarding a contract for a building project to any bidder other than plaintiff, are set forth in *PCI/RCI, A Joint Venture v. United States,* 36 Fed. Cl. 761 (1996), and are discussed in summary fashion.

PCI/RCI, a Joint Venture ("PCI/RCI" or "plaintiff"), consisting of Roers' Construction, Inc. ("RCI"), and Professional Contractors, Inc. ("PCI"), submitted a bid, bid bond, and certificate of procurement integrity signed by James Roers "Partner" or "Managing Partner" for a project known as the Modernization of the Federal Building/Post Office/Courthouse, Bismarck, North Dakota, Project No. IND96016. After determining that plaintiff was the apparent low bidder, the General Services Administration ("GSA") inquired into whether plaintiff was in fact a *bona fide* affiliation and, if so, whether Mr. Roers' signature alone was sufficient to bind the joint venture.

Following several unsuccessful efforts to satisfy GSA's inquiries, plaintiff's bid was deemed non-responsive. Preaward Contracting Officer Ann N. Fleckenstein informed plaintiff by letter dated August 23, 1996, that "there was nothing in the agreement giving James P. Roers the authority to bind the joint venture or PCI." Ms. Fleckenstein based her decision, in part, on Federal Acquisition Regulation ("FAR") § 4.102(d), 41 C.F.R. § 4.102(d) (1996), which requires each participant in a joint venture to sign the contract. After reconsideration Ms. Fleckenstein, by letter dated August 26, 1996, further opined that "[e]ach participant in a joint venture is required to sign the bid and furnish evidence that one has the authority to bind the other."

Plaintiff initiated a pre-award bid protest action seeking injunctive relief to prevent GSA from awarding the contract to any other bidder. In evaluating plaintiff's claim, the court recognized that a breach of an implied contract only " 'occurs ... if the contracting agency acts in an arbitrary and capricious, *i.e.,* irrational or unreasonable, manner in rejecting the bid.' " *PCI/RCI,* 36 Fed. Cl. at 767 (quoting *NKF Eng'g Inc. v. United States,* 805 F.2d 372, 375 (Fed.Cir.1986)). To prevail in the underlying litigation, plaintiff was required to demonstrate, by a preponderance of the evidence, that the agency's actions 1) were without a rational or reasonable basis, or 2) violated an applicable procurement statute or regulation. *See id.* (citing *CACI Field Servs., Inc. v. United States,* 854 F.2d 464, 466 (Fed.Cir.1988) (per curiam)).

Despite the significant hurdles facing plaintiff, the court granted its request for injunctive relief. Consistent with the Federal Circuit's decision in *Sadelmi Joint Venture v. Dalton,* 5 F.3d 510 (Fed.Cir.1993), the court applied the fundamental principle of joint venture law that participants in a *bona fide* joint venture are permitted to apportion their respective responsibilities as they see fit. Noting that the contracting officer erroneously applied FAR § 4.102(d), thereby establishing an invalid requirement with which plaintiff was unable to comply, the court found that the contracting officer's decision requiring two signatures to bind the joint venture was either irrational or unreasonable. After prevailing in the litigation phase, plaintiff filed this action pursuant to the EAJA, seeking $18,016.00 in attorneys' fees and $3,419.57 for other expenses.

## DISCUSSION

"The EAJA provides a specific waiver of sovereign immunity to enable persons who prevail in certain suits brought against the government to an award of attorney fees incurred in challenging the government's action in court." *Chiu v. United States,* 948 F.2d 711, 714 (Fed.Cir.1991). As a waiver of sovereign immunity, the EAJA must be construed strictly. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983). Eligibility for attorneys' fees requires "1) that the claimant be a 'prevailing party'; 2) that the Government position was not 'substantially justified'; 3) that no special circumstances make an award unjust; and 4) that any fee application be submitted ... within 30 days of final judgment ... and be supported by an itemized statement." *Commissioner, Immi-*

*gration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990) (quoting 28 U.S.C. 2412(d)(1)(A)); *see Doty v. United States*, 71 F.3d 384, 385 (Fed.Cir.1995). The Government bears the burden of proving that its position was substantially justified. *Gavette v. OPM*, 808 F.2d 1456, 1465–66 (Fed.Cir. 1986) (*en banc*) (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4997). Moreover, the Government must show that its actions were substantially justified throughout the entire dispute, not just the litigation phase. *Id.* at 1467. In determining whether a fee award is merited, the court will "make a judgment call" determining whether the Government's position is substantially justified. *Chiu*, 948 F.2d at 715.

### 1. *Entitlement*

Plaintiff has based its motion, in part, on 28 U.S.C. § 2412(d)(1)(A), which provides that

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Defendant concedes that plaintiff's petition was timely filed, that plaintiff meets the statutory eligibility requirements set forth in 28 U.S.C. § 2412(d)(2)(B) [1], and that plaintiff is a prevailing party. *See* Def's Br. filed Mar. 17, 1997, at 2. Defendant also has elected not to raise any arguments suggesting the applicability of special circumstances that would render an award unjust. Nevertheless, de-

fendant contends that its position was substantially justified. Defendant also asserts that certain elements of plaintiff's petition are either unreasonable or not recoverable under the EAJA.

■ Although defendant has not challenged plaintiff's status as a prevailing party, the nature of this action requires that the court address the issue. A prevailing party is defined as having "succeed[ed] on any significant issue which achieves some of the benefit [plaintiff] sought in bringing the suit." *Owen v. United States*, 861 F.2d 1273, 1274 (Fed.Cir.1988) (per curiam). Moreover, the *Owen* court noted that in order to have the status of a prevailing party, "it was not necessary to be a victor only after entry of a final judgment following a full trial on the merits." *Id.* In the case at bar, plaintiff has obtained relief on the merits of its dispute with the Government. Because plaintiff has prevailed on each material point of the dispute, plaintiff has established itself as a prevailing party for purposes of the EAJA.

Before addressing the merits of plaintiff's application, the court notes that Congress did not intend that the EAJA act as an automatic fee-shifting device. *Gavette*, 808 F.2d at 1465. As the Federal Circuit observed in *Gavette*, the EAJA established a statutory exception to the general "American rule" requiring each party to bear its own litigation costs.[2] *Id.* at 1460. Congress, by enacting the EAJA, sought to provide a means to prevent individuals, as well as small business concerns, from being deterred by potential costs of litigation from seeking redress for allegedly unreasonable government action. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4984. Congress thus enacted the EAJA to "reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States." *Id.* Congress also chose to "place

---

1. 28 U.S.C. § 2412(d)(2)(B) provides eligibility requirements stating that an entity eligible for an EAJA award must have both a net worth of less than $7 million and fewer than 500 employees at the time the civil action was filed.

2. For over 200 years, United States courts have generally required each party to bear its own

litigation costs. *See Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796). This so-called "American rule" contrasts with the "English rule" under which the losing party generally is required to pay the costs of litigation.

the burden on the government to prove the reasonableness of its actions [so as to] encourage parties to contest action which they believe to be unreasonable .…" *Id.* at 18, 1980 U.S.C.C.A.N. at 4997.

■ Because the EAJA was not intended as a mandatory fee-shifting device, courts must apply the "substantially justified" standard to the particular facts of each discrete case. Prior to the 1985 amendments to the EAJA, courts generally limited their evaluation to the position of the United States during the litigation phase of a dispute. *See, e.g., Gava v. United States,* 699 F.2d 1367, 1371 (Fed.Cir.1983) (stating that EAJA inquiry concerns Government's litigating position, but not its administrative position). *But see Natural Resources Defense Council v. EPA,* 703 F.2d 700, 707 (3d Cir.1983) (stating that "position" encompasses both litigation and agency level action). The 1985 amendments to the EAJA, however, made it clear that "the position of the United States includes the position taken by the agency at the administrative level." *Gavette,* 808 F.2d at 1467; *accord Doty,* 71 F.3d at 386; *TGS Int'l Inc. v. United States,* 983 F.2d 229, 229–30 (Fed.Cir.1993); *Chiu,* 948 F.2d at 714. While construing the 1985 amendments to the EAJA, the Supreme Court addressed this point and noted:

> The fact that the "position" is again denominated in the singular, although it may encompass both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions, buttresses the conclusion that only one threshold determination for the entire civil action is to be made.

*Jean,* 496 U.S. at 159, 110 S.Ct. at 2319 (citation omitted).

■ Having established that the Government must demonstrate that its conduct was substantially justified throughout the entire course of the dispute, it next becomes necessary to define the term "substantially justi-

fied." In resolving a split among the circuits, the Supreme Court provided a conclusive definition of "substantially justified" when it noted that

> as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"–that is, justified to a degree that could satisfy a reasonable person.

*Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The Supreme Court equated this definition with a reasonable basis in law and fact.

In the underlying litigation, the court found that the contracting officer was unaware of the general principle of joint venture law providing that the signature of one partner is sufficient to bind the joint venture. Moreover, the contracting officer improperly applied FAR § 4.102(d) to the case at bar. According to the contracting officer, this provision, which governs contracts as opposed to bids, required the signature of both parties on the bid. Because the contracting officer was flat out wrong and defendant's position on the merits could not be supported, the court granted an injunction on the ground that the Government's actions were irrational or unreasonable. *See Schuenemeyer v. United States,* 776 F.2d 329, 332 (Fed.Cir.1985) (finding no substantiated justification when defendant relied on an inapplicable regulation).

■ That plaintiff is entitled to an EAJA award does not necessarily follow even though the court found on the merits the agency action to be unreasonable or irrational. Rather, "the court must … reach a judgment independent from that of the merits phase." *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986).[3] This examination is to be made by examining the dispute through the "EAJA Prism." *Id.* Consequently, the court must conduct a re-

---

3. Congress expressly has repudiated the proposition that " '[a]gency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the [EAJA].' " *See Federal Election Comm'n v. Rose,* 806 F.2d 1081,

1089–90 (D.C.Cir.1986) (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess. 9–10, *reprinted in* 1985 U.S.C.C.A.N. 132, 138). A court's determination of agency action on the merits therefore cannot be dispositive as to the question of a potential fee award.

view of the Government's actions that is independent of the decision on the merits.

■ After considering all of the facts and circumstances pertaining to the Government's actions at the agency level, the court finds that those actions were not substantially justified. While GSA was justified in inquiring into the validity of the joint venture and in seeking to determine who had authority to bind the joint venture, the documentation provided by plaintiff should have sufficed to assuage GSA's concerns. The fact that GSA continually misapplied FAR § 4.102(d) adds to the unreasonableness of the agency-level action. Having misconstrued the FAR, the agency developed an initial requirement that would have required each partner in the joint venture to sign the bid. Plaintiff provided GSA with its Joint Binding Agreement, its Fictitious Partnership Name Certificate, and its Contractors License. This documentation should have alleviated any concerns on the part of the contracting officer with respect to both the validity of the joint venture and Mr. Roers' authority to bind PCI.

As its primary argument during the litigation phase,[4] defendant proffered a complex merger argument suggesting that FAR § 4.102(d) was incorporated by implication into the bid solicitation. Because this contract was procured through sealed bidding, defendant suggested that a contract resulted upon acceptance of the bid, so that the failure of both partners to sign the bid rendered the bid nonresponsive. Defendant's position lacked a reasonable basis in both law and fact. *See Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550. The court noted that defendant's argument was violative of basic tenants underlying the sealed bidding process, was contrary to established legal principles, and was a continued misconstruction of procurement regulations. *PCI/RCI*, 36 Fed. Cl. at 774–76.

During the litigation phase, defendant contested whether Mr. Roers had sufficient authority to bind the joint venture on the bid,

bid bond, and certificate of procurement integrity. Defendant correctly argued that the contracting officer may inquire into the signatory authority of a bidder. *See In the Matter of General Ship and Engine Works, Inc.*, 55 Comp. Gen. 422, 426 (1975); *In the Matter of Atlantic Maintenance Co.*, 54 Comp. Gen. 686, 692 (1975). Moreover, it is also true that the bidder bears the burden of establishing signatory authority. *See In the Matter of Forest Scientific Inc.*, 58 Comp. Gen. 276 (1979). The sheer weight of the evidence against defendant's position, however, rendered defendant's decision to continue litigating this point without substantial justification. The court therefore finds that defendant's litigation phase position was not substantially justified.

### 2. *Quantum*

■ Having established that plaintiff is entitled to an EAJA award, the court next must determine the appropriate quantum. As an initial matter, defendant argues that plaintiff is not entitled to fees and expenses incurred before filing its motion for a temporary restraining order on September 14, 1996. The gravamen of defendant's argument is that plaintiff is entitled only to attorneys' fees and expenses incurred during a judicial proceeding. Defendant relies primarily on *Levernier Const., Inc. v. United States*, 947 F.2d 497 (Fed.Cir.1991). In *Levernier* the court addressed the scope of a civil action as defined by the EAJA, concluding that, because the EAJA is a waiver of sovereign immunity, its terms must be strictly construed. *Id.* at 503. The Federal Circuit stated also that "at its earliest, EAJA coverage may begin after the decision of and in pursuit of an appeal from the decision of a contracting officer." *Id.* at 502.

■ In the case at bar, plaintiff's bid was deemed nonresponsive on August 23, 1996. GSA treated subsequent communica-

---

4. The court is mindful that the proceedings accompanying an injunction force the Department of Justice to operate under severe time pressure and without the institutional knowledge that plaintiff's attorneys have accumulated through participation in the agency-level dispute. *See Essex Electro Eng'rs, Inc. v. United States*, 4 Cl.

Ct. 463 (1984), *aff'd*, 757 F.2d 247 (Fed.Cir. 1985). Nevertheless, at the hearing on plaintiff's application for a temporary restraining order, the court informed defendant of the likely invalidity of GSA's position, as well as the concomitant risks that might accompany litigation, namely an award of attorneys' fees.

tions as a request for reconsideration. These communications continued until September 6, 1996. Anticipating the potential futility of continued communication, plaintiff began preparing a bid protest in early September 1996. This preparation required plaintiff to incur certain fees that may be recovered under the EAJA. Therefore, the court will permit recovery for the attorneys' fees incurred on September 3, 4, 5, 6, and 13.[5]

Defendant next objects to plaintiff's claim in the amount of $1,542.39 for computerized research services. When evaluating a claim for expenses, the "quantum and method of proof of each allowable expense is discretionary with the trial court." *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir.1987). Plaintiff has provided affidavits outlining in detail the nature of each of the claimed computerized research sessions. This documentation is sufficient to support an EAJA recovery. However, plaintiff's briefs failed to cite key cases that the court found and upon which the court ultimately relied. As a result plaintiff's claim for computerized legal research services is reduced by 50%. *See Cooper v. United States R.R. Retirement Bd.*, 24 F.3d 1414 (D.C.Cir.1994) (disallowing in part claim for legal research and brief writing resulting in unsatisfactory briefs).

Defendant does not object to the other expenses submitted by plaintiff, including photocopying, postage, travel expenses, telephone, and other miscellaneous expenses associated with the instant litigation or to plaintiff's claim for EAJA expenses incurred in preparation of its application. In *Oliveira* the Federal Circuit rejected a Claims Court[6] decision holding that a prevailing party could not recover expenses such as photocopying, brief binding, and overnight delivery services. The court provided a broad definition of what constitutes a recoverable expense, noting that "the trial court in its discretion,

may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." *Id.* at 744. The court also cited a Ninth Circuit decision, *International Woodworkers of Am., Local 3–98 v. Donovan*, 792 F.2d 762, 767 (9th Cir.1986), allowing expenses such as telephone, postage, air courier, and attorney travel. 827 F.2d at 744 n. 27. Plaintiff has documented each of the other claimed expenses with scrupulous detail. The court will permit recovery for these expenses as they are reasonable. The fees and expenses associated with the EAJA application are also reasonable. *Schuenemeyer*, 776 F.2d at 333 (allowing recovery for fees associated with EAJA application).

Defendant's final objection to plaintiff's claim is based on the hourly rate for plaintiff's attorneys. The EAJA states that "attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.A. § 2412(d)(2)(A)(ii) (West Supp.1997).

Plaintiff seeks attorney fees in the amount $160.00 and $165.00 per hour, respectively, for each of the two attorneys for whom billing statements have been submitted. To justify fees above the statutory ceiling, plaintiff must demonstrate "distinctive knowledge or specialized skill needful for the litigation in question." *Pierce*, 487 U.S. at 572, 108 S.Ct. at 2554. The burden of demonstrating pertinent specialized skills or knowledge rests with the movant. *Kunz Constr. Co., Inc. v. United States*, 16 Cl.Ct. 431, 438 (1989), *aff'd*, 899 F.2d 1227 (Fed.Cir. 1990). Plaintiff provides no evidence that would entitle it to an award in excess of $125.00 per hour. Moreover, there is no

---

**5.** The fee request in the amount of 2.75 hours incurred on September 4, 1996, would be recoverable if the court were able to determine the portion of the time billed that should be allocable to preparing the bid protest. The court, however, has no obligation to reconstruct plaintiff's submission. *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 405 (Fed.Cir.1987).

Also, as the court cannot determine the purpose of the photocopying expenses incurred during the pre-September 14 period, those expenses are disallowed.

**6.** The erstwhile United States Claims Court was renamed the United States Court of Federal Claims.

evidence before the court that there is a paucity of qualified attorneys specializing in construction law in the Minneapolis, Minnesota area. The court therefore declines to increase plaintiff's attorneys' fees above the statutory ceiling.

 In support of its application, plaintiff is required to submit "contemporaneous records of attorney's time and usual billing rates...." *Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir. 1987). Plaintiff has complied with this requirement by submitting detailed documentation of the dates on which work was performed, the attorney who performed the work, and the nature of the work performed. The number of hours claimed by plaintiff is reasonable. Although the court is not required to accept the proffered documentation, it will generally do so:

> In a case such as this, the risk of abuse is minimal because plaintiff has no assurance of recovering and must assume it will bear the full cost of litigation. Plaintiff can therefore be expected to exercise control over the time spent and the rates charged. Absent some specific showing of abuse, the court will not disapprove counsel's decision....

*Weaver–Bailey Contractors, Inc. v. United States* 24 Cl.Ct. 576, 580 (1991) (quoting *Florida Rock Indus., Inc. v. United States,* 9 Cl.Ct. 285, 289 (1985)).

The court finds that plaintiff is entitled to recover the following fees and expenses:

| | |
|---|---|
| Attorneys' fees | $12,575.00  (100.6 hrs × $125.00). |
| Expenses | $ 2,596.87 |
| | $15,171.87 |

## CONCLUSION

Accordingly, based on the foregoing, plaintiff's motion for fees and expenses is granted to the extent that the Clerk of the Court shall enter of an award for plaintiff in the amount of $15,171.87.

**IT IS SO ORDERED.**