Jill K. MASSIE, as Mother and Next Friend of Autumn Massie, Plaintiff,

v.

UNITED STATES, Defendant.

No. 95–330C.

United States Court of Federal Claims.

Nov. 3, 1999.

---

R. Gordon Pate, Pate, Lloyd, Fuston & Cochrun, L.L.P., Birmingham, AL, attorney of record for the plaintiff.

Brian S. Smith, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were Anthony H. Anikeeff, Assistant Director, and David M. Cohen, Director, Commercial Litigation Branch, and David W. Ogden, Acting Assistant Attorney General.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

This case comes to this court on remand from the United States Court of Appeals for the Federal Circuit for adjudication and determination of damages consistent with *Massie v. United States*, 166 F.3d 1184 (Fed.Cir. 1999). The questions presented for consideration by the court are the appropriate measure of damages and the form in which those damages are to be awarded, and whether the plaintiff is entitled to attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412 (West 1994 & Supp.1998).[1]

In 1983, Jill K. Massie, as mother and next of friend of Autumn Massie, a minor, filed a claim with the Department of the Navy pursuant to the Military Claims Act, 10 U.S.C. § 2733 (1982), for injuries sustained during delivery in the United States Naval Hospital in Naples, Italy. *Massie v. United States*, 40 Fed.Cl. 151, 157 (1997). The plaintiff and the government entered into a settlement agreement. Pursuant to the terms of the agree-

ment, the Massie family was to receive the benefits of a sum not to exceed $1.3 million, to be distributed on behalf of the United States to the benefit of the plaintiff in three ways: (1) $150,000.00 was to be paid to Autumn's parents in satisfaction of their individual claims; (2) $350,000.00 was to be placed into a Reversionary Medical Care Trust, created on behalf of Autumn Massie; and (3) an annuity, having an A + rating by A.M. Best, was to be purchased which satisfied the payment schedule set forth in the settlement agreement. This schedule included monthly payments of $2,500.00 to Autumn for the first twenty years of the annuity, monthly payments of $3,500.00 to Autumn thereafter for a minimum of 15 years or until the end of her life, a payment to Autumn of $100,000.00 in 2008, payments of $200,000.00 to Autumn in 2013 and 2018, and payments to Autumn's Medical Care Trust of $100,000.00 in 1996 and 2006.

After satisfying the first two elements of the settlement agreement, the government, through JMW Settlements, Inc., purchased the annuity from the Executive Life Insurance Company (ELIC). ELIC later experienced financial difficulties and filed for reorganization under Chapter 11 of the United States Bankruptcy Code. The remaining assets were purchased by a third party, which offered a restructured payment package to annuitants. On December 29, 1993, policy holders, annuitants, and contract holders were sent notice of approval of the modified Rehabilitation Plan and offered an opportunity to participate in the plan. The notice outlined the procedures for participation by offering two options, either to elect to participate in the plan or to opt out of the Rehabilitation Plan. On February 7, 1994, James A. Harris, III, attorney for Jill and Autumn Massie, signed and submitted the Election Form to participate in the Rehabilitation Plan, accepting the following payment schedule:

---

1. Pub.L. No. 96–481, tit. II §§ 201–08, 96 Stat. 2321, 2325–30 (1980), amended and extended in

Pub.L. No. 99–80, 99 Stat. 183 (Aug. 5, 1985).

| Payments to Autumn Massie | Settlement | Restructured Agreement |
|---|---|---|
| Monthly Annuity (1993–2006) | $ 2,500.00 | $ 1,316.00 |
| Monthly Annuity (2006–death) | 3,500.00 | 1,820.00 |
| Lump-sum payment 2008 | 100,000.00 | 52,000.00 |
| Lump-sum payment 2013 | 200,000.00 | 104,000.00 |
| Lump-sum payment 2018 | 200,000.00 | 104,000.00 |
| **Payments to Medical Care Trust** | | |
| Lump-sum payment 1996 | 100,000.00 | 59,000.00 |
| Lump-sum payment 2006 | 100,000.00 | 59,000.00 |

Jill Massie, as mother and next of friend of Autumn Massie, brought suit in the United States Court of Federal Claims, claiming that as a result of the decrease reflected in these restructured payment amounts, the government had breached its contract with her. The court granted the government's motion for summary judgment, holding that after the government had met its obligations under the settlement agreement by funding an annuity payment plan, that the plaintiff on behalf of Autumn Massie, not the government, had opted into the Rehabilitation Plan and accepted the restructured annuity amounts. Therefore, the trial court found that the government had fulfilled its obligations and was not obligated to guarantee future annuity payment amounts, beyond the restructured amounts. *Massie v. United States,* 40 Fed.Cl. at 172.

On appeal, the United States Court of Appeals for the Federal Circuit reversed and remanded, finding that the language of the original settlement agreement required the government to guarantee all the annuity disbursements, detailed therein. According to the Federal Circuit, "[a]lthough the government may delegate its duties under the Agreement to another entity, such as Executive Life Insurance Company, this delegation does not absolve it of its obligations." *Massie v. United States,* 166 F.3d 1184, 1190 (Fed.Cir.1999). This court examines the issues of damages and plaintiff's claim for attorney's fees following the remand from the United States Court of Appeals for the Federal Circuit.

**DISCUSSION**

With respect to the measure of damages, three issues have been raised for adjudication, namely, shortfall amounts due on past payments, plus interest for these payments, compensation owed for the shortfall in future payments and the form of that compensation, and potential government liability for the plaintiff's attorney's fees under EAJA.

Pursuant to the terms of the remand, the defendant has conceded the first point, accepting liability for shortfalls in past payments and for interest upon these shortfalls, and agreeing to Ms. Massie's suggested interest rate of six percent.[2] The second disagreement between the parties is not with regard to the amount of compensation for the shortfalls in future annuity payments, but concerns the form of any such compensation. Ms. Massie seeks $729,960.91 from the defendant, contending that in assessing damages

2. The defendant stated in pleadings filed with the court that:
[W]e concede that interest upon the shortfall in previous payments is appropriate and that Ms. Massie's proposed rate of 6% is not unreasonable. We therefore agree with Ms. Massie's proposed payment for past shortfalls in the amount of $94,425.86 for monthly payments of $1,184 from October 1, 1993 through April 11, 1999 plus a $41,000 medical trust payment that was to be paid in April, 1996, plus interest for both, totaling $147,105.08.

Although subsequent to the remand, several status conferences have been held with all parties in attendance and several pleadings have been filed to address issues related to damages, most recently on October 12, 1999, the parties have not provided updated numbers beyond April 11, 1999. To avoid further protracting the proceedings, any request for modification of today's judgment, if filed, shall be filed jointly by the plaintiff and the defendant.

in the form of loss of future payments, the appropriate method of compensation is a lump sum payment of the present value of the shortfall in the stream of future annuity payments. The government asserts that its obligation is only to purchase another annuity which will supplement the restructured annuity and insure payment in the full amounts listed in the settlement agreement. Alternatively, the government has offered to pay the cost of the purchase of such an annuity directly to Ms. Massie.

■ In the above captioned case, the United States Court of Appeals for the Federal Circuit found that the defendant had breached the terms of the settlement agreement between the federal government and the Massie family. *Massie v. United States*, 166 F.3d at 1189–90. "The general rule in common law breach of contract cases is to award damages sufficient to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *San Carlos Irrigation and Drainage Dist. v. United States*, 111 F.3d 1557, 1563–64 (Fed.Cir.1997) (citing *Estate of Berg v. United States*, 231 Ct.Cl. 466, 469, 687 F.2d 377 (1982)).

■ The United States Court of Appeals for the Federal Circuit found that the settlement agreement award to the benefit of Autumn Massie required the government to guarantee all of the annuity disbursements described therein. *See Massie v. United States*, 166 F.3d at 1190. The Federal Circuit wrote:

> The language specifying that the annuity "will result in distributions" and that the disbursements "shall be paid" is unambiguously mandatory and says unequivocally that the Massies must receive the payments.... Because the payments are mandatory, the government must be responsible for their payment; no one else is a party to the Agreement.

*Id.*

Although this court found that the government had discharged its settlement agreement responsibilities by making a lump sum payment to the Massies, paying $350,000.00 into a reversionary medical care trust and

purchasing an annuity to effectuate future monthly and lump sum payments to Autumn Massie, the Circuit Court rejected such reasoning. Nonetheless, the language of the settlement agreement certainly contemplated allowing the government to use the annuity purchase vehicle to fund its liability. Thus, even pursuant to the remand, while the government must insure that the plaintiff receives the specified installments detailed in the settlement agreement, it is apparent from the language of that agreement that the intention of the parties at the time the settlement agreement was signed allowed for the payment of the specified disbursements through the purchase of an annuity, thereby allowing the government to preserve the assets of the public treasury.

In defendant's brief on damages filed with this court following the remand, a document from JMW Settlements quotes $428,488.00 as the purchase price for an annuity which will make payments sufficient to cover the future shortfalls. Plaintiff's attorney, however, did not fully comment on defendant's quoted amount in responsive pleadings or at the status conference the court held specifically to discuss that issue. Moreover, at the status conference, the court offered the plaintiff's attorney an additional opportunity to submit comments in writing to the court and to the defendant. However, as plaintiff's attorney had done in his earlier brief, the subsequent submission by the attorney focused only on the $215,155.00 amount necessary to "fund a One Thousand Six Hundred Eighty Dollar ($1,680.00) per month payment for the life of Autumn Massie, beginning May 2006," but omitted addressing the other future shortfalls, the monthly payments prior to May, 2006 and the later lump sum payments due to Autumn Massie under the settlement agreement. Although omitted by plaintiff's attorney, these figures had been included by the defendant in the original annuity quote from JMW and again acknowledged in the October 6, 1999 status conference, with all parties present. As these amounts are due to Autumn Massie to comply with the Circuit Court's reading of the settlement agreement, and have been supplied by the defendant, the court will include the higher amount.

Regular payments from a purchased annuity plan can provide Autumn Massie with continued payments pursuant to the original settlement agreement. Pursuant to the terms of the remand order, however, if the company from which the annuity is purchased once again fails, the government would continue to remain liable for any shortfalls. Pursuant to the language of the settlement agreement, the plaintiff has no entitlement to a lump sum payment if the government chooses to purchase an annuity to fund the payments. In fact, awarding a lump sum payment of the present value of the installments to plaintiff at this time could place the plaintiff in a significantly better position than anticipated by the settlement agreement, and could create a heightened monetary obligation for the government beyond the intent of the original settlement. With an award of the present value of the agreement, the plaintiff could purchase an annuity that might yield payments which significantly exceed the shortfall of the restructured annuity. As discussed above, the government suggests that an annuity which will yield the specified payments can be purchased for $428,888.00. The plaintiff's proposed award of $729,960.91 would allow the purchase of an annuity with a much greater yield. Far from simply making the plaintiff whole, the plaintiff's proposal creates a windfall opportunity not contemplated by the original settlement agreement contract.

Moreover, not only could the government be forced to pay an amount far in excess of that which is necessary to meet their obligations under the settlement (i.e., the cost of an annuity which will cover the shortfall in payments), awarding a lump sum payment to plaintiff, the victim's parent, could jeopardize continued payments to the benefit of Autumn Massie. In the event that the lump sum award to the plaintiff were to be handled unwisely, then Autumn Massie might not receive the benefit of the terms of the original settlement agreement. Neither the Massies' decision to accept the annuity form of payment in the past, nor their decision to opt into the restructured payment plan after ELIC failed were found to be sufficient to eliminate the government's continuing obligations as interpreted by the Appellate Court. Therefore, receipt of a lump sum payment at this time may or may not allow the government to complete its liability to fund the settlement agreement payments to Autumn Massie if the plaintiff fails to be able to guarantee these payments and to provide for her child. Assuming that, under the terms of the remand, the government continues to be liable for the settlement agreement payments to Autumn Massie detailed therein, the government may fund those payments by purchasing another annuity and continuing to assume the risks of that approach.

In the alternative, the government has suggested that this court could enter judgment in favor of the plaintiff with a lump sum amount for the price of purchasing the shortfall annuity package. This court sees two problems with defendant's alternative proposal. First, as previously mentioned, the price of the annuity does not reflect the full benefit to the plaintiff of the settlement agreement as interpreted by the Court of Appeals for the Federal Circuit. In accordance with that opinion, the government must insure that the annuity payments are made. If a new annuity is purchased from another company that also were to encounter economic difficulties, the government would remain responsible for the purchase of a third annuity to cover any shortfall. The market price of an annuity is devalued by the implicit risk to the purchaser of a failure of the annuity. The government's obligation to guarantee the payments in this case is not reflected in the quoted prices. This may explain, in part, the difference between the cost of the annuity and the calculation of present value based on the "safe" rate of return of six percent. Second, under the remand, it is possible that the government's liability would continue even if the plaintiff were to accept the price of the short fall annuity as a lump sum award and attempt to invest it independently. As such, a lump sum award of the purchase price of the shortfall annuity package might fail to satisfy the terms of the contract as interpreted by the Circuit Court. According to the intent of the remanding Circuit Court opinion, the purpose of the contract into which the parties entered is to provide continued pay-

ments, regardless of the wisdom exercised in selecting a particular company from which to purchase the annuity, and, perhaps, also regardless of how a parent or executor might manage a lump sum payment.

In sum, the defendant is ordered to cause regular payments to be made to Autumn Massie equal to the shortfall between the payments that were to be provided pursuant to the settlement agreement and the original annuity package, and the payments that she would have actually received via the restructured annuity package following the failure of ELIC. The government's obligation, in addition to the existing, restructured annuity, will be as follows: (1) monthly payments of $1,184.00 until the end of the initial twenty year period stipulated in the settlement agreement, (2) monthly payments of $1,680.00 in accordance with the provision stipulating payment for the remainder of the annuity, (3) lump sum payments of $48,-000.00, $96,000.00, and $96,000.00 to Autumn Massie, or her estate, in 2008, 2013, and 2018, respectively, and (4) lump sum payments of $41,000.00 in 1996 and 2006 to the Medical Care Trust. Each of the aforementioned payments will be made in accordance with the terms of the original settlement agreement. The government may choose to purchase another annuity to cover the shortfall in payments to Autumn Massie, for which they will remain responsible. Whether the government chooses to purchase an annuity or to make a lump sum payment to the plaintiff, it risks continued liability to the plaintiff under the remanding opinion of the United States Court of Appeals for the Federal Circuit.

The plaintiff also alleges that the government is liable for attorney's fees under EAJA due to the language used by the United States Court of Appeals for the Federal Circuit in holding that the government was liable for guaranteeing the annuity payments after purchase of the annuity. *Massie v. United States*, 166 F.3d at 1190. Plaintiff contends that this language suggests that the government's position was not substantially justified and, thus, EAJA attorney's fees should be awarded.

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also Arcambel v. Wiseman*, 3 Dall. 306, 1 L.Ed. 613 (1796). "Absent statute or enforceable contract, litigants pay their own attorney's fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. at 257, 95 S.Ct. 1612 (citations omitted). This has come to be known as the "American Rule," and the only exceptions to this rule are those created by Congress and a small group of common law equitable exceptions which federal courts lack the power to enlarge. *See id.* at 269, 95 S.Ct. 1612.[3] In addition, litigants seeking to recoup litigation expenses from the United States also face the barrier of sovereign immunity. *See Chiu v. United States*, 948 F.2d 711, 714 (Fed.Cir. 1991); *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1460 (Fed.Cir.1986); *Griffin & Dickson v. United States*, 21 Cl.Ct. 1, 4 (1990). Only a specific statutory directive waiving immunity can make the United States potentially liable in suit. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

Congress recognized that the American Rule deterred individuals and small businesses " 'from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights.' " *Gavette v. Office of Personnel Management*, 808 F.2d at 1459 (quoting H.R.Rep. No. 96–1418, at 5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984); *see also PCI/RCI v. United States*, 37 Fed.Cl. 785, 788 (1997) (also quoting from H.R.Rep. No. 96–1418,

---

**3.** The Supreme Court in *Alyeska* noted the equitable exceptions of (1) willful disobedience of a court order, (2) bad faith on the part of a losing party, and (3) the common fund or common benefit exception allowing recovery of costs when the prevailing party is a trustee of property or is a party preserving or recovering a fund for the benefit of others in addition to himself. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. at 257–59, 95 S.Ct. 1612.

at 5, 1980 U.S.C.C.A.N. at 4984). Congress explained:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

H.R.Rep. No. 96–1418, at 9, 1980 U.S.C.C.A.N. at 4988.

To address these concerns, in 1980, Congress enacted the EAJA. The purpose of the EAJA was to "'reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney's fees, expert witness fees and other expenses against the United States.'" *Gavette v. Office of Personnel Management*, 808 F.2d at 1459–60 (quoting H.R.Rep. No. 96–1418, at 6, 1980 U.S.C.C.A.N. 4984); *see PCI/RCI v. United States*, 37 Fed.Cl. at 788 (also quoting from H.R.Rep. No. 96–1418, at 6, 1980 U.S.C.C.A.N. at 4987).

In order to accomplish its purpose, EAJA made two primary changes in the then prevailing law. *Gavette v. Office of Personnel Management*, 808 F.2d at 1460 (citing H.R.Rep. No. 96–1418, at 9, 1980 U.S.C.C.A.N. at 4987). First, EAJA section 2412(b) extended the existing common law and statutory exceptions to the American Rule to make the United States liable for attorney fees just as private parties would be liable. *Id.* (citing H.R.Rep. No. 96–1418, at 9, 17, 1980 U.S.C.C.A.N. at 4987, 4996).[4] That section reads:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C.A. § 2412(b). Prior to EAJA, many different statutes had contained specific waivers of sovereign immunity for the United States. *Gavette v. Office of Personnel Management*, 808 F.2d at 1460. EAJA section 2412 was enacted to provide a "uniform rule" which would "make such specific exceptions unnecessary." *Id.* (citing 28 U.S.C.A. § 2412 (Historical and Statutory Notes)).

The second primary change made by EAJA section 2412 was "establishing a general statutory exception for an award of fees against the Government," *Gavette v. Office of Personnel Management*, 808 F.2d at 1460 (quoting H.R.Rep. No. 96–1418, at 9, 1980 U.S.C.C.A.N. at 4987), with a statutory presumption that those awards were to be made "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A). EAJA section 2412(d)(1)(A) states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a),

---

4. The House Committee on the Judiciary stated that

> Section 2412(b) permits a court in its discretion to award attorney's fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties.... Thus, under this subsection, cases involving the United States would be subject to the "bad faith," "common fund" and "common benefit" exceptions to the American rule against fee-shifting. The United States would

also be liable under the same standards which govern awards against other parties under Federal statutory exceptions, unless the statute expressly provides otherwise.

*Gavette v. Office of Personnel Management*, 808 F.2d at 1460 (citing H.R.Rep. No. 96–1418, at 17, 1980 U.S.C.C.A.N. at 4996); *see, e.g., Knight v. United States*, 982 F.2d 1573, 1579–82 (Fed. Cir.1993) (common fund exception); *St. Paul Fire & Marine Ins. Co. v. United States*, 4 Cl.Ct. 762, 769 (1984) (bad faith exception).

incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* The "position of the United States" is defined in EAJA section 2412(d)(2)(D) to mean:

[I]n addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.

28 U.S.C.A. § 2412(d)(2)(D).

The United States Supreme Court noted in *Commissioner, Immigration & Naturalization Service v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), that "[a]ny given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161–62, 110 S.Ct. 2316. The United States Court of Appeals for the Federal Circuit also has adopted this position. *See Gavette v. Office of Personnel Management,* 808 F.2d at 1467 (position of the United States includes that taken by the agency at the administrative level); *accord Doty v. United States,* 71 F.3d 384, 385–86 (Fed.Cir.1995); *Chiu v. United States,* 948 F.2d at 715 ("[W]hen assessing whether to award attorney's fees incurred by a party who has successfully challenged a governmental action in a particular court, the entirety of the conduct of government is to be viewed, including the action or inaction by the agency prior to litigation."); *KMS Fusion, Inc. v. United States,* 39 Fed.Cl. 593, 597 (1997).

■ Thus, eligibility for an award of attorney's fees and expenses in a civil action requires (1) that the claimant be a prevailing party; (2) that the government's position

viewed over the entire course of the dispute was not substantially justified; (3) that no special circumstances make an award unjust; and (4) pursuant to section 2412(d)(1)(B), that any fee application be submitted to the court within thirty days of final judgment in the action and be supported by an itemized statement. *See Comm'r, Immigration & Naturalization Serv. v. Jean,* 110 S.Ct. at 2319; 28 U.S.C.A. § 2412(d)(1)(A).

■ For the first EAJA requirement, a plaintiff is a prevailing party if entitlement to some relief on the merits of one or more claims is established. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 & n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (standard is generally applicable in cases for which Congress authorizes an award of fees to a "prevailing party"); *Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1567–69 (Fed.Cir. 1987). In a case such as the one at bar, a court can determine if an applicant has "substantially" prevailed in its position by looking at the substance of the litigation. *See Schultz v. United States,* 918 F.2d 164, 166 (Fed.Cir.1990), *cert. denied,* 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 80 (1991). The parties in this case do not dispute that the plaintiff is a prevailing party.

■ Regarding the second requirement, when a party has prevailed in litigation and filed an EAJA claim against the government, the government bears the burden of establishing that its position was substantially justified. *Doty v. United States,* 71 F.3d at 385 (citing *Gavette v. Office of Personnel Management,* 808 F.2d at 1465–66); *PCI/RCI v. United States,* 37 Fed.Cl. at 788. The Supreme Court has held that "substantially justified" does not mean " 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). It is no different from the "reasonable basis in both law and fact" formulation used by the majority of Courts of Appeals. *Id.* It does, however, mean more than merely undeserving of sanctions for frivolousness. *Id.* at 566, 108 S.Ct. 2541. Thus, when determining wheth-

er the overall position of the United States was substantially justified, a court should "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d at 715. As noted earlier with respect to the interpretation of "position of the United States" under EAJA, the government must show that its actions were substantially justified throughout the entire dispute, not just during the litigation phase. *See Gavette v. Office of Personnel Management*, 808 F.2d at 1467.

 Whether the government's position was substantially justified is a factual determination which must be made on a case-by-case determination. *See Community Heating & Plumbing v. Garrett*, 2 F.3d 1143, 1145 (Fed.Cir.1993). Objective indicia can be relevant, but are not necessarily conclusive. *See Pierce v. Underwood*, 487 U.S. at 568–69, 108 S.Ct. 2541. Among the criteria that have been considered are the parties' respective settlement positions. *See, e.g., FDL Technologies, Inc. v. United States*, 26 Cl.Ct. 484, 486 (1992). However, "the unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements." *Pierce v. Underwood*, 487 U.S. at 568, 108 S.Ct. 2541. Also relevant are the stage at which the merits were decided, *see id.* at 568–69, 108 S.Ct. 2541, the state of the law when the government took its position, *see Owen v. United States*, 861 F.2d 1273, 1274–75 (Fed.Cir.1988), and the factual complexity or novelty of the subject matter, *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 468 (Fed.Cir.), *cert. denied*, 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988).

 The plaintiff asserts that the United States Court of Appeals for the Federal Circuit's opinion, determining that the language of the settlement agreement regarding the payment schedule states that the Massies must be paid "unequivocally" and was "unambiguously mandatory," demonstrates that the government was not substantially justified in litigating the claim. *Massie v. United States*, 166 F.3d at 1190. The plaintiff argues that by misconstruing an unambiguous contract the government's position was inherently unreasonable and, thus, not substantially justified.

This court finds plaintiff's argument unconvincing. The contract read as a whole can reasonably be interpreted in several ways. This court construed the language of the settlement agreement addressed by the Circuit Court together with additional language also in the settlement agreement differently from the Appellate Court and also found the subsequent actions of the plaintiff when she accepted the original annuity payments and opted into the restructured payment plan to be significant with regard to concluding defendant's liability.

The United States Court of Appeals for the Federal Circuit wrote, "[t]he language specifying that the annuity 'will result in distributions' and that the disbursements 'shall be paid' is unambiguously mandatory and says unequivocally that the Massies must receive the payments." *Massie v. United States*, 166 F.3d at 1190. The Circuit Court also found that since no one besides the Massies and the government were parties to the settlement agreement, under the agreement, the government could not escape from its liability to another entity. *Id.* The Circuit Court's use of "unambiguous" and "unequivocal" is directed to the interpretation of terms of the contract which detail the monthly and lump sum payments due to Autumn Massie.

This court found that the structure of the settlement agreement was significant, and that the affirmative obligations to the Massies appear in section 1 of that agreement. That language directs the payment to JMW Settlements of a sum not to exceed $1,300,-000.00 "to be used and distributed on behalf of the United States to meet the distribution terms in the agreement," *Massie v. United States*, 40 Fed.Cl. at 170, for (a) payment of $150,000.00 to the Massie parents, (b) payment of $350,000.00 into a reversionary medical care trust, and (c) the purchase of an annuity to result in distribution on behalf of the United States. The trial court also

pointed to additional language in the settlement agreement that states: "[a]ny portion of the $1,300,000.00 remaining after providing for [the payment schedule set forth] in the agreement shall be returned by JMW, Settlements, Inc. to the United States." The language in the settlement agreement, regarding which the Circuit Court used the terms "unambiguous" and "unequivocal," appears subsequently in the agreement in subparagraphs 1(c)(i), (ii) and (iii) and details the amounts of the monthly annuity and subsequent lump sum distributions. The language states that "the purchase of an annuity ... will result in distributions on behalf of the United States as follows: ...," and the numbers follow. Based on the placement in the settlement agreement of the distribution amounts as flowing from the requirement for the government to purchase an annuity, this court concluded that subparagraphs 1(c)(i), (ii) and (iii) do not place an affirmative obligation on the defendant to make or guarantee the payments resulting from the annuity once the government has provided funds to purchase the annuity. Furthermore, such guarantee language was not included in the settlement agreement. This court also discussed plaintiff's acceptance, without government involvement, of the restructured annuity payment schedule after ELIC failed, as further evidence that the government did not have a continuing obligation on the payment schedule.

The arguments made by the government to this court and to the Court of Appeals for the Federal Circuit, although eventually rejected by the Court of Appeals, were not unreasonable. Moreover, this court accepted defendant's arguments when it granted the defendant summary judgment. While a decision for the government on the trial level does not automatically establish that the government's action was substantially justified, *see United States v. An Undetermined Number of Defendants*, 869 F.Supp. 906, 910 n. 2 (D.Kan.1994) (citing *Pierce v. Underwood*, 487 U.S. 552, 569, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)), it does suggest a plausible or reasonable argument has been articulated. Moreover, it suggests that the government was not unwarranted in pursuing the litigation. There is also no suggestion in the instant case of any other unreasonable conduct on the part of the government before or during litigation.

In the instant case, the relevant factors, discussed above, for determining substantial justification on a case-by-case basis support the government's actions. First, the plaintiff and her spouse, on behalf of Autumn Massie, agreed to a settlement agreement on their claim in which they agreed to the purchase of an annuity with a company with an A + rating by A.M. Best. At that time, the government acted in good faith, and purchased an annuity in compliance with the terms of the agreement. Moreover, when ELIC failed, those acting on behalf of Autumn Massie, including the plaintiff, were offered and accepted a restructured annuity payment plan, the government was not involved in the Massie family's decision to accept the restructured payment schedule at reduced amounts. Second, the merits of the instant case brought by the plaintiff in the Court of Federal Claims were decided on summary judgment, without extensive discovery, and, thus, no argument can be made that the government insisted on needlessly extending the litigation. Third, given that the issues presented in the Court of Federal Claims appeared novel and without precedential guidance in the case law of the United States Court of Federal Claims or the United States Court of Appeals for the Federal Circuit, the government was substantially justified in defending against the plaintiff's claim as part of its responsibility to preserve the public treasury. Moreover, the government could point to decisional law, albeit not in this circuit, in support of its position. The government based its position on a United States District Court case involving a similar settlement agreement in which the court found that the obligation of the United States did not extend beyond purchasing the annuity. *See Linebarger v. United States*, 927 F.Supp. 1280 (N.D.Cal.1996).

Consequently, this court finds that, given the facts presented in the instant case, the position advocated by the government, although ultimately rejected by the Court of Appeals for the Federal Circuit, was reasonable and substantially justified at the agency

level and during the course of litigation. This court, therefore, denies the plaintiff's EAJA claim.

## CONCLUSION

As discussed above, the defendant shall pay damages for past shortfalls and interest in the amount of $147,105.08 and shall arrange for the payment of periodic damages to Autumn Massie equal to the shortfall between the payments that were to be provided in her original annuity package and the payments that she will actually receive as a result of the restructured annuity package or a lump sum payment. The government may purchase another annuity to meet its obligations, and there is nothing in the settlement agreement which requires the defendant to use the lump sum method of payment. In accordance with this opinion, plaintiff's request for costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, is, hereby, **DENIED.** The Clerk's Office shall enter judgment consistent with this opinion.

**IT IS SO ORDERED.**