**UNIVERSAL FIDELITY LP, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 05–602C.

United States Court of Federal Claims.

March 13, 2006.

O. Kevin Vincent and Robert J. Wagman, Jr., Baker Botts L.L.P., Washington D.C., for plaintiff.

Nancy M. Kim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington,

D.C., for defendant. H.R. Roberson, Internal Revenue Service, Washington, D.C., of counsel.

## ORDER AND OPINION

HODGES, Judge.

Universal Fidelity has applied for attorney's fees and costs under the Equal Access to Justice Act sustained in connection with its bid protest against the United States. Prior to our issuing an opinion in the underlying litigation, the Government notified the court of its intention to cancel the challenged solicitation. We dismissed the Complaint without prejudice to plaintiff's right to file a related lawsuit if the new solicitation had the same or similar concerns that prompted the original protest.

Defendant argues that plaintiff was not the "prevailing party" in the underlying litigation, and that the Government's position was substantially justified. We disagree with defendant's contentions for the reasons set forth below.

## BACKGROUND

Congress authorized the Internal Revenue Service to employ private debt collection agencies to recover outstanding tax debt.[1] In early April 2005, the IRS announced that it would conduct a pilot program during Summer 2006 and begin implementation of the full debt collection program in 2007. The IRS stated that it would seek bidders from the General Services Administration's Federal Supply Schedule for debt collection services.[2] Universal Fidelity is a private entity on the Schedule for debt collection services. *See* GSA Schedule 520–4.

The IRS restricted the field of competition for the pilot program to bidders that "currently ha[d] a task order for and . . . [were]

currently performing debt collection services for the federal government." This excluded Universal from competing for an award under the pilot program. Universal Fidelity protested to the Contracting Officer on May 6, 2005, contending that the mandatory requirement was arbitrary, capricious, and unduly restrictive.

The IRS denied Universal's agency-level protest on June 3. Plaintiff then filed its Complaint with this court on June 7, seeking preliminary and permanent injunctive relief. It argued that the IRS' decision to limit its procurement to those currently performing under task orders was arbitrary, capricious, an abuse of discretion, and not in accordance with applicable procurement law. Universal asked the court to order: (1) removal of the requirement restricting bidders to those currently performing task orders for the Federal Government; (2) removal of all terms that require vendors to have previous federal government experience; (3) removal of all terms that provide a competitive advantage to bidders with previous federal government experience; and (4) cancellation of the current solicitation and issuance of a non-offending one.

We held a status conference two days after plaintiff filed its Complaint. The parties agreed the court would issue a decision on the merits without hearing oral arguments. The matter was fully briefed on Friday, July 22, and we issued an Order the following Monday to "alert the Agency that [the court] intend[ed] to enjoin th[e] solicitation, and to afford it an opportunity to make alternative plans and to take appropriate actions in a prompt and efficient manner." Order, No. 05–602C (July 25, 2005). The Order stated that "excluding vendors on the Schedule that do not have current task orders irrespective of their experience or ability is arbitrary and

1. Section 881 of the American Jobs Creation Act amended the Internal Revenue Code, 26 U.S.C. § 6306, allowing the IRS to contract with private agencies that would assist the Federal Government with the collection of tax debt.

2. The Federal Supply Schedule Program provides federal agencies with a simplified process for procuring commercial goods and services. Agencies can comply with the Competition in Contracting Act without conducting full and

open negotiated solicitations by issuing task orders to vendors on the appropriate Federal Supply Schedules. The General Services Administration identifies vendors with fair and reasonable prices who enter into indefinite delivery contracts to provide their goods or services at the stated prices. FAR Part 8 provides streamlined procedures by which agencies can award task orders.

capricious in the circumstances presented." *Id.* We added, "[t]he Agency may accomplish the same ends more fairly and efficiently by other means, including other mandatory minimum requirements. Limiting the Solicitation to vendors currently performing debt collection services does not necessarily give the Agency the best opportunity to achieve its stated goals." *Id.*

Defendant filed a status report on July 29. The Government reported that "[b]ased upon the court's July 25 order, the [IRS] intends to take corrective action to cure the deficiency the Court has identified in this solicitation. Accordingly, the IRS intends to cancel the solicitation which is the subject of this protest ... and re-issue the solicitation without the challenged mandatory requirement as soon as practical." Def. Status Rpt. (July 29, 2005). Defendant also asked "that the Court dismiss this protest as moot upon the cancellation of the current solicitation." *Id.*

We issued another Order on August 4, noting that "removing the mandatory requirement w[ould] extend the list of qualified bidders to include plaintiff." Order, No. 05–602C (Aug. 4, 2005). We did not dismiss the case then. The IRS cancelled its Request and notified the court that it anticipated filing a motion to dismiss the protest. Plaintiff stated it would oppose a motion to dismiss and did not consider the case moot.

Defendant filed a motion to dismiss Universal's protest for lack of subject matter jurisdiction, arguing that the protest was moot because the IRS had cancelled the solicitation that was the subject of plaintiff's Complaint. Universal responded that the Government's motion presumed the only relief plaintiff had requested was cancellation. We directed the Clerk to dismiss plaintiff's Complaint because the court "ha[d] no reason to be concerned at th[at] time that the new solicitation ... [would] present concerns similar to those that prompted plaintiff's petition." Order, No. 05–602C (Sept. 28, 2005). We did not necessarily agree that the case was moot upon the Government's cancellation, however.

The Clerk dismissed Universal's Complaint without prejudice to plaintiff's right to file new pleadings as necessary, and the Clerk was to "treat them as a case related to this one." *Id.* Plaintiff filed an application for attorney's fees under the Equal Access to Justice Act on December 21, 2005.

## DISCUSSION

The Equal Access to Justice Act is a fee-shifting statute that authorizes a court to "award to a prevailing party other than the United States ... fees and other expenses ... incurred by that party in any civil action brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). The court "shall award" the fees "unless [it] finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* An EAJA applicant such as Universal Fidelity must demonstrate that when it filed the lawsuit, its net worth was less than $7 million and it did not employ more than 500 persons. 28 U.S.C. § 2412(d)(2)(B)(ii).

Universal seeks $86,372.98 in fees and expenses. The Government does not dispute that plaintiff conforms to the statutorily imposed limits on net worth and employees. It maintains, however, that plaintiff is not a "prevailing party" as contemplated by the EAJA. In the event the court concludes that Universal prevailed on its underlying claims, defendant believes that its litigation position was substantially justified.

### A. *Prevailing Party Rule*

■ The Equal Access to Justice Act does not define the term "prevailing party." The Supreme Court recently gave meaning to the term as it is used in the Fair Housing Amendments Act and the Americans with Disabilities Act, however. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600–02, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The Court ultimately rejected the so-called "catalyst theory"[3] and deemed a plaintiff the "prevailing party" where there is a "material

---

**3.** *See Vaughn v. Principi,* 336 F.3d 1351, 1355 (Fed.Cir.2003) ("Under the catalyst theory, a party achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.").

alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835. The Court considered "enforceable judgments on the merits and court-ordered consent decrees" ways of materially altering the legal relationship between two parties. *Id.*

The Federal Circuit extended the Supreme Court's ruling in *Buckhannon* to the EAJA. *See Brickwood Contractors, Inc. v. United States,* 288 F.3d 1371, 1378–79 (Fed.Cir.2002) (*Brickwood III*), *rev'g* 49 Fed.Cl. 738 (2001) (*Brickwood II*), *denying reconsideration of* 49 Fed.Cl. 148 (*Brickwood I*).[4] The *Brickwood* decisions are instructive. The Court of Federal Claims in that case conducted a hearing in conjunction with plaintiff's request for a temporary restraining order. The trial judge made several comments at the TRO hearing that led to the Government's withdrawal of the contested solicitation. The Government then filed a motion to dismiss, stating it would issue a new solicitation. The court awarded attorney's fees pursuant to plaintiff's EAJA application after finding defendant's decision "to cancel the original solicitation and resolicit was the product of reconsideration by the government, which followed the filing of Plaintiff's first bid protest and the ensuing court proceedings on plaintiff's cause of action." *Brickwood I,* 49 Fed.Cl. at 156. The trial court found defendant's cancellation of the solicitation was,

> as stated by the defendant, 'in light of the court's comments at the TRO hearing.' The government has offered no alternative explanation for why it changed its mind and proceeded to cancel and issue a new RFP. The court finds that plaintiff meets [prevailing party status] because it achieved a result on a significant issue in the litigation, which resulted in a benefit to the plaintiff, and therefore, plaintiff was the prevailing party in the first bid protest.

*Id.* at 156–57.

The Federal Circuit reversed the EAJA award. *Brickwood III,* 288 F.3d at 1380. The Circuit held that the "cited comments" of the trial court were "not sufficient to establish a judicial imprimatur and they d[id] not constitute a court-ordered change in the legal relationship of the parties as *Buckhannon* requires." *Id.* The Circuit disagreed with the trial court's conclusion that *Buckhannon* does not "requir[e] formal written judgments on the merits or formal findings of unlawful conduct." *Id.* at 1381. In *Brickwood*, the Federal Circuit found that "there was neither a written nor oral judgment" on the merits. *Id.* The court concluded that statements at the TRO hearing were not sufficient to invoke prevailing party status in accordance with the Supreme Court's ruling in *Buckhannon. Id.*

The Court of Federal Claims examined the meaning of "prevailing party" again in *Rice Services, Ltd. v. United States,* 59 Fed.Cl. 619 (2004) (*Rice I*), *overruled by* 405 F.3d 1017 (Fed.Cir.2005) (*Rice II*). This was another case in which the trial court did not issue an opinion on the merits of plaintiff's bid protest, yet awarded plaintiff attorney's fees under the EAJA. In *Rice,* the Government voluntarily undertook remedial action and sought dismissal of the underlying protest claim. The trial court then issued an Order describing the Government's proposed plans. It concluded: "it is ORDERED that . . . [t]he remedial action described and promised in defendant's submissions shall be undertaken." *Rice I,* 59 Fed.Cl. at 621. The court dismissed plaintiff's Complaint without prejudice to any future protest claim arising out of the new solicitation and subsequently awarded attorney's fees to plaintiff. The Government moved for reconsideration of the EAJA award.

The trial court in *Rice* distinguished "preliminary comments" of the court at a TRO hearing, as in *Brickwood,* from its specific direction to defendant that it undertake certain remedial actions. *Id.* at 622. The majority of the courts of appeals that had addressed the "prevailing party" issue after *Buckhannon* construed the rule as allowing recovery of fees and expenses even without an enforceable judgment on the merits or a court-ordered consent decree "so long as the

---

4. The Circuit reviewed the language and legislative history of the EAJA and found "no basis for distinguishing the term 'prevailing party' in the EAJA" and other fee-shifting statutes, such as those examined by the Supreme Court in *Buckhannon. Brickwood III,* 288 F.3d at 1379.

action taken carried with it sufficient judicial imprimatur." *Id.* The trial court denied reconsideration, finding that its directing the Government to comply with its proposed action "not only impressed defendant's curative efforts with the imprimatur of this court, but also altered the legal relationship between the parties." *Id.*

The Federal Circuit again reversed the fee award. In doing so, it established a new rule that could be reconciled both with *Buckhannon* and the Circuit's prior opinions. The court found that "an EAJA applicant must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, *or the equivalent of either of those.*" *Rice II,* 405 F.3d at 1025 (emphasis added). Such a position was consistent with other courts of appeals' decisions that had analyzed the "prevailing party" issue, according to the Circuit. *See, e.g., Roberson v. Giuliani,* 346 F.3d 75, 81 (2d Cir.2003) ("[J]udicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur."); *Am. Disability Ass'n, Inc. v. Chmielarz,* 289 F.3d 1315, 1319 (11th Cir.2002) ("[T]he essential test established by [*Buckhannon*] requires the plaintiff to achieve a judicially sanctioned change in the legal relationship of the parties.").

The Federal Circuit continued, "*Buckhannon* has essentially created a threshold that a plaintiff must meet in order to be deemed a prevailing party." *Rice II,* 405 F.3d at 1026. Two outcomes that "clearly meet the threshold" are "[e]nforceable judgments on the merits and court-ordered consent decrees." *Id.* (citing *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835). The "threshold can also be met by other court action 'equivalent' to a judgment on the merits or a court-ordered consent decree," however. *Id.* "[C]ourt action is not 'equivalent' unless it carries sufficient judicial imprimatur to materially change the legal relationship of the parties." *Id.*

### Action on the Merits

■ The issue before this court is whether plaintiff has obtained a judgment on the merits, a court-ordered consent decree, or the equivalent of either. We did not issue an opinion on the merits in the underlying protest [5] or a consent decree. Consequently, for Universal to obtain "prevailing party" status we must conclude plaintiff has obtained the equivalent of a judgment on the merits or a consent decree. Our actions must have had sufficient judicial imprimatur to materially alter the legal relationship between Universal and the Government. *See Rice II,* 405 F.3d at 1026.

The July 25 Order advised the parties that we would enjoin the solicitation. The matter had been fully briefed, and the court and the parties agreed that no hearing was necessary. Unlike the comments in *Brickwood's* TRO proceeding, this court's conclusions exhibited an essence of finality and were made late in the process. *Cf. Brickwood III,* 288 F.3d at 1380:

> [W]e note that the excerpt from the TRO hearing cited by the court is preceded by the following comment: "So, obviously, this is a *bare-bones record* and those are *very conclusory and very preliminary thoughts,* but it should be enough for you to work from, from this point forward." The [trial] court proceeded to set a schedule for further proceedings in this case.

(emphasis added). Moreover, we stated a legal conclusion: "excluding vendors on the Schedule that do not have current task orders irrespective of their experience or ability is arbitrary and capricious in the circumstances presented." We ruled that "[t]he Agency may accomplish the same ends more fairly and efficiently by other means, including other mandatory minimum requirements. Limiting the Solicitation to vendors currently performing debt collection services does not necessarily give the Agency the best opportunity to achieve its stated goals." *Id.*

This court had performed the requisite analysis, and we were finalizing a written

---

**5.** *See Blacks Law Dictionary* (8th ed.2004) (defining an "opinion" as "[a] court's written statement explaining its decision in a given case, usu[ally] including the statement of facts, points of law, rationale, and dicta").

decision. In consideration of the time constraints the Agency faced in connection with the rollout of the debt collection program, we thought it best to alert the Agency of what action the court intended to take. Though brief, the forewarning was final in form. Its purpose was to afford the IRS an opportunity to take corrective action promptly to avoid undue delays in its program.[6] Had defendant not performed the curative act right away, we were prepared to issue an opinion granting injunctive relief to plaintiff.

### Voluntary Agency Action

Defendant now contends it never agreed with the court's conclusion, but it represented to us that its decision to cancel the current solicitation was "based upon the recent Court of Federal Claims order." Def. Status Rpt. (July 29, 2005). Such inconsistencies cannot be reconciled. We disagree that the IRS voluntarily undertook corrective action.

The Federal Circuit rejected the trial court's award in *Rice I*, noting that a court may not take "what would otherwise be a 'catalyst theory' case and convert it ... into a case where the plaintiff is ... accorded 'prevailing party' status." *Rice II*, 405 F.3d at 1027. We dismissed Universal's Complaint, noting that "[p]laintiff has obtained the relief that it sought." Order, No. 05–602C (Sept. 28, 2005). On the surface, such a statement by us would appear to belie recovery under the EAJA by contemplating the precise criticism of the Supreme Court. *See Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835 (finding that a defendant's "voluntary change in conduct, although perhaps accomplishing what plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change"). This case presents a unique set of facts, however, that when viewed as a whole does not run afoul of the concerns that prompted the Supreme Court in *Buckhannon* to rescind the catalyst theory of recovery. A comparison of these circumstances with those in *Brickwood* and *Rice* demonstrates this.

The trial court in *Rice* found that the requested relief had been "substantially and voluntarily" afforded by the Government. The Federal Circuit considered such voluntary and unilateral action to lack the sufficient judicial imprimatur to invoke prevailing party status. In fact, the Circuit held that the facts of *Rice* presented less of a case for finding the protestor a "prevailing party" than the circumstances in *Brickwood*.

> [I]n *Brickwood*, the government only took remedial action after the court made preliminary comments from the bench regarding its view on the merits, comments that were adverse to the government. Here, by contrast, the court had given no indication as to its view on the merits of the case prior to the government seeking dismissal.

*Rice II*, 405 F.3d at 1027–28.

Were we to place the instant application on this continuum, we think our facts present the strongest case for plaintiff. The comments in *Brickwood* were "very preliminary" and "bare-bones" and offered at the TRO phase; our July 25 Order was a ruling on the merits. The parties in *Brickwood* came before the trial court following plaintiff's request for a preliminary injunction. At the TRO hearing in *Brickwood*, the trial court judge made "preliminary" remarks that led the Government to withdraw the challenged solicitation on its own accord. In contrast, nothing we said prompted the IRS to undertake corrective action early on. Following an initial telephone conference, the parties proceeded to brief the case fully. The Government vigorously defended its position throughout. We did not conduct oral arguments, and issued a prompt notice to the IRS that we considered its actions "arbitrary and capricious" and directed the Agency to issue a new Solicitation that opened "the list of potential bidders to everyone on the Schedule." Order, No. 05–602C (July 25, 2005). This case cannot be equated to *Brickwood* where, as the Federal Circuit noted, "the court had given no indication as to its view on the merits of the case prior to the Government seeking dismissal." *Rice II*, 405 F.3d at 1028.

---

6. We acted pursuant to the Government's own request. Defendant had expressed its hope in a status report that "the Court would be able to resolve the issues in this case prior to July 29."

The statements in our July 25 Order, together with the Government's admission that "[b]ased upon [that] order" the IRS would "cure the deficiency the Court has identified in this solicitation" and the subsequent cancellation, render this court's actions "the equivalent of" a judgment on the merits. *See Rice II,* 405 F.3d at 1025. We find that the July 25 Order carried "sufficient judicial imprimatur to materially alter the legal relationship" between Universal and the IRS, such that plaintiff was a "prevailing party" within the meaning of the EAJA.

We feel strongly that to deny Universal attorney's fees under the circumstances presented would impart to the defendant an undeserved advantage in bid protest litigation. Such a ruling would allow the Government to issue a solicitation that it knows may be subject to legal challenge,[7] deny an agency-level protest, await litigation in the Court of Federal Claims, allow plaintiff to incur substantial costs in arguing its position, and then, at the eleventh-hour cancel the offending solicitation to avoid having to pay plaintiff's expenses arising out of a lawsuit designed to bring the Government's actionable conduct to the court's attention. In short, such a scenario depicts the facts of our case.[8]

Plaintiff was the "prevailing party" in this case, as contemplated by the EAJA. Universal is entitled to recover attorney's fees and expenses, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

### B. *Substantial Justification*

■ The Government must prove its position was substantially justified. *Doty v. United States,* 71 F.3d 384, 385 (Fed.Cir.

1995). This means the Government must show that its position was "justified to a degree that could satisfy a reasonable person." *Larsen v. United States,* 39 Fed.Cl. 162, 167 (1997) (quoting *Commissioner, INS v. Jean,* 496 U.S. 154, 159, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) and *Pierce v. Underwood,* 487 U.S. 552, 565–66, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). The inquiry encompasses both an agency's pre-litigation conduct and the subsequent litigation by the Justice Department in this court. *Doty,* 71 F.3d at 386 (citing *Gavette v. Office of Pers. Mgmt.,* 808 F.2d 1456, 1467 (Fed.Cir.1986) (*en banc*)). We must "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis both in law and fact" to decide whether defendant's position is substantially justified. *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991).

Defendant claims its position was reasonable in light of the law and facts of our case. It alleges the solicitation was not unduly restrictive because the mandatory requirement was rationally related to the IRS' specific need during the pilot program to demonstrate that the Agency could employ private debt collection services to recover outstanding taxes owed to the Federal Government. It was reasonable for the IRS to believe that contractors experienced in dealing with the Government would best ensure the success of the pilot program because they possessed certain qualifications germane to tax collection, according to defendant.

The Agency's reasoning was that contractors who were currently performing collection work under existing task orders had proven their ability to interface with the Government's computer systems, could meet the Government's security requirements, and could initiate performance of the IRS' task

---

**7.** The Agency had acknowledged prior to the procurement that it "might receive protests claiming we are imposing overly restrictive requirements." Administrative Record 255.

**8.** Plaintiff also had underscored the accelerated nature of the court's issuance of the July 25 Order. We do not necessarily consider this reflective of the strength of plaintiff's position, or of any corresponding weakness of the Government's position. The Government "hope[d] that the Court would be able to resolve the issues in

this case prior to July 29." We understood defendant's concerns regarding the time-sensitive nature of the procurement and sought to avoid the delay involved with issuing a merits opinion out of respect for those interests. Such procedural issues should not detract from the substance of the legal conclusions. Plaintiff should not be prejudiced now by our decision to act in accordance with defendant's preference for a swift resolution.

orders quickly. However, the IRS did not require that "qualified" contractors with current task orders be capable of meeting these criteria successfully. At the same time, the mandatory requirement may have excluded contractors who could have met those needs. In addition, the restriction could have omitted contractors who recently had held task orders and, therefore, may have had experience with other federal debt collection programs. The requirement also would have made eligible a contractor with task orders that were ongoing at the time of the solicitation, but that had not been renewed. The Agency's single, overly broad restriction had the effect of imprecisely distilling the Federal Supply Schedule. It was not reasonable, and the court advised the parties of this conclusion on July 25.[9] The fact that the Government lost on the merits does not end our inquiry, however. *See Gavette*, 808 F.2d at 1465. Since we review defendant's position as a whole, we must render a judgment "that is independent of the decision on the merits." *PCI/RCI v. United States*, 37 Fed. Cl. 785, 789 (1997).

The IRS denied plaintiff's agency protest in June 2005. Universal raised the same arguments with the IRS that it brought before us, according to plaintiff, and defendant does not dispute this point. Defendant eventually agreed to provide a substantial part of the relief that plaintiff requested by canceling the challenged solicitation in response to the court's Order. This was the same relief that plaintiff sought before the Agency only months before. Such a reversal of position does not support the Government's contention that its position was substantially justified. The IRS' denial of administrative relief, followed by the Agency's curative efforts upon this court's issuance of an order notifying defendant we intended to enjoin the solicitation seemingly negates the Government's argument that its position was substantially justified, as a whole. *E.g., Doty*, 71 F.3d at 386. Plaintiff has requested attorney's fees incurred in connection with its proceedings

before this court. Had the matter been appropriately considered during the administrative protest there would have been no need for the litigation here.

We have not found "special circumstances [that would] make an award unjust." *See* 28 U.S.C. § 2412(d)(1)(A). Defendant has not attempted to disqualify plaintiff from an EAJA award on this basis. Plaintiff is eligible to recover attorney's fees.

### C. *Reasonableness of Attorney's Fees*

Universal's EAJA application seeks $76,060.66 in fees for 487.1 hours of attorney work related to the bid protest from April 27, 2005 through August 5, 2005. Universal also amended its application to include fees incurred in connection with the EAJA petition before us. The statute imposes a cap of $125 per hour, but plaintiff has raised this rate to $156.15 per hour with a cost-of-living increase based upon the Department of Labor's Consumer Price Index from June 2005. The EAJA permits such an adjustment. *See Chapman Law Firm Co. v. United States*, 65 Fed.Cl. 422, 425 (2005). Plaintiff also has asked for $6,279.50 in non-lawyer fees and $4,032.82 in disbursements during these periods.

Defendant has not disputed this upward adjustment or the rates charged for non-attorney work, but has raised several objections to plaintiff's application with regard to the attorney's fees. It seeks a reduction of the fees sought by Universal of thirty percent. Defendant argues that: (1) Universal's invoices are vague or incomplete; (2) certain time entries by plaintiff are excessive, redundant, or unnecessary; and (3) time spent on the agency protest is not recoverable under the EAJA.

### *Universal's Billing Methods*

The Government maintains that the court should reduce some of the attorney's fees Universal has requested. Plaintiff allegedly has offered time entries that are vague and

---

9. Defendant also contended that its position was substantially justified because the IRS satisfied the Competition in Contracting Act's full and open competition requirement by ordering of services from the Federal Supply Schedule. We

did not address whether the Agency's actions accorded with CICA or other procurement laws because we had determined that the IRS' mandatory requirement in the solicitation was arbitrary.

contain inadequate descriptions of work. The objectionable billing includes entries such as "review e-mail," unexplained acronyms such as "TIGTA report," and redacted information.

We reviewed over sixty pages of invoices plaintiff submitted with its EAJA petitions, and the descriptions of counsel's work seem clear. The time sheets show that counsel performed such tasks for this case as Drafting and Updating Pleadings, Participating in Office Conferences or Teleconferences, and attending to other pertinent litigation tasks. Moreover, the fees plaintiff has requested pursuant to the EAJA represent a reduction of almost sixty percent of the rates actually incurred by Universal. Plaintiff's documentation is sufficient and its billing practices are adequate.

### Inefficient, Unnecessary, or Duplicative Charges

Plaintiff's counsel did not manage time efficiently, according to the Government. One example defendant offers is an associate's billing for time spent researching the legislative history of the American Jobs Creation Act and bills addressing the IRS' ability to utilize private debt collection. The Government claims such work was unnecessary in this case because no question of statutory interpretation turned on legislative history. Plaintiff notes that its pleadings included information derived from the legislative history research conducted by Universal's counsel. See, e.g., Pl.'s Mem. of Points and Authorities in Supp. of its Mot. for Prelim. and Permanent Inj. at 11 n. 22. Such research is standard in a case like ours, and plaintiff made use of it.

The Government also disputes the attorney's fees plaintiff incurred after the Agency cancelled the bid. Defendant claims that Universal's opposition to the Government's motion to dismiss was groundless and needless, so plaintiff should not be allowed to recover fees for objecting to it. Plaintiff disagreed with the Government's contention that the bid protest was moot upon cancellation, however. We did not necessarily agree with defendant's argument on this point either. The fees plaintiff seeks for objecting

to the Government's dismissal motion are reasonable. After-cancellation fees incurred in connection with the filing of the EAJA application are recoverable as well. See Former Employees of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1368 n. 3 (citing INS v. Jean, 496 U.S. at 161, 110 S.Ct. 2316).

The Government argues that plaintiff's counsel had overstaffed this case, asserting it was unnecessary for two attorneys to draft and revise the complaint, to research bid protest cases and discovery issues, and to draft and revise the briefs. We examined the invoices plaintiff offered as an addendum to its EAJA application and conclude staffing by plaintiff's counsel was reasonable. Two attorneys is not excessive for such work. The total number of attorneys assigned to the case is not disproportionate to the work required for a dispute of this nature. The Government appears to have had at least as many attorneys attending to its side of this case. Its briefs lists four counsel in addition to the trial attorney.

### Pre-litigation Expenses

Plaintiff's application seeks fees beginning on April 27, 2005. Its bid protest Complaint was not filed in this court until June 7, however. "[T]he EAJA only contemplates reimbursement for fees and expenses directly associated with the pursuit of a 'civil action' in federal court, 28 U.S.C. § 2412(d)(1)(A), and does not encompass administrative actions." California Marine Cleaning, Inc. v. United States, 43 Fed.Cl. 724, 731 (1999) (citing Levernier Construction v. United States, 947 F.2d 497, 501–02 (Fed.Cir.1991)); see also Oliveira v. United States, 827 F.2d 735, 744 (Fed.Cir.1987) (noting that Court of Federal Claims "may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court"). We agree with defendant that Universal cannot recover expenses it incurred in submitting its claim to the contracting officer. See Levernier, 947 F.2d at 501.

The Court of Federal Claims has awarded fees to an EAJA applicant for services ren-

dered prior to the filing of its complaint with the court. *See PCI/RCI,* 37 Fed.Cl. at 791. However, the Federal Circuit has expressly limited recovery under the EAJA "only to fees for legal and factual research preparatory to" Court of Federal Claims litigation. *Levernier,* 947 F.2d at 501. "[E]xpenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court ... cannot be awarded under the EAJA." *Oliveira,* 827 F.2d at 744.

None of the invoices plaintiff submitted for April 2005 mention litigation in this court. A May 5 entry "Research and draft complaint and notice form" is the first time the possibility of filing a complaint here appears in the billing records. Even then the invoices show that plaintiff's work involving the agency protest and its work in preparation for filing a complaint in this court were occurring simultaneously.[10] Thus, hours incurred during this time were not "solely or exclusively" in connection with bid protest litigation before this court.

Counsel's time entries after June 3 seem to relate exclusively to the bid protest Universal filed with us. Plaintiff's billing methods do not differentiate effectively between hours spent working on the agency protest and those spent in anticipation of litigation in this court. We must disallow the portion of plaintiff's claim prior to June 3, because plaintiff has not shown that work conducted before this date relates "solely and exclusively" to the litigation here. This results in a deduction of 182 attorney hours during April, May, and early June 2005.[11] Plaintiff may recover fully its fees from June 3 forward pursuant to its EAJA application.

## CONCLUSION

*Plaintiff's application for fees and expenses under the EAJA is GRANTED IN PART.* The Clerk of Court will enter judgment for plaintiff in the amount of $57,953.69. This represents $47,641.37 in attorney's fees, $6,279.50 in non-lawyer fees, and $4,032.82 in expenses. The Clerk also will award Universal $328.00 for costs.[12]

---

**10.** *See, e.g.,* Time Entry of J.S. Boger "Research and draft *complaint*" on 05/05/05; Time Entry of J.S. Boger "Prepare *protest* for filing" on 05/06/05 (emphasis added).

**11.** The invoices Universal provided show that its counsel billed 18.4 hours from April 27 through the end of the month. Pl.'s Mot., Ex. C at 2–3. Counsel worked a total of 141.6 hours during May, and 22.0 hours through and including June 3. *Id.* at 13, 18.

**12.** Plaintiff filed a bill of costs on December 21, 2005, requesting reimbursement for the following: $250.00 for fees of the Clerk; $328.00 for duplication of plaintiff's papers; and $405.60 for duplication of defendant's filings. The Government has not objected to plaintiff's bill of costs. Rule 54(d) provides that costs other than attor-

ney's fees may be awarded to the prevailing party to the extent permitted by law. The law permits recovery of costs for duplication of papers "necessarily obtained for use in the case," if such costs are reasonable. 28 U.S.C. § 1920(4). The briefs were filed with the court for dispositive matters, and thus necessarily obtained for this case. Plaintiff requested $0.20 per page copied, and we find this assessment is reasonable. All requested costs are recoverable.

Plaintiff's revised certification of fees and expenses filed on February 9, 2006, includes costs for duplication of defendant's papers and filing fees. We therefore deduct $405.60 (duplication costs for defendant's filings) and $250.00 (fees of the Clerk) from plaintiff's bill of costs.