# United States Court of Appeals for the Federal Circuit

---

**DELLEW CORPORATION,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

**TECH SYSTEMS, INC.,**
*Defendant*

---

2016-2304

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00808-MMS, Judge Margaret M. Sweeney.

---

Decided: May 1, 2017

---

ADAM K. LASKY, Oles Morrison Rinker & Baker LLP, Seattle, WA, argued for plaintiff-appellee. Also represented by SHAUN CHRISTOPHER KENNEDY.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before LOURIE, REYNA, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant United States ("the Government") appeals the opinion and order of the U.S. Court of Federal Claims awarding attorney fees and costs to Appellee Dellew Corporation ("Dellew") pursuant to the Equal Access to Justice Act ("the EAJA"), 28 U.S.C. § 2412(a), (d)(1)(A) (2012). The central question here is whether comments that the Court of Federal Claims made during a hearing and prior to the Government taking corrective action materially altered the relationship between the parties such that Dellew qualified as a "prevailing party" under the EAJA. The Court of Federal Claims found its comments sufficient to confer prevailing party status on Dellew. *See Dellew Corp. v. United States* (*Dellew II*), 127 Fed. Cl. 85, 89–95 (2016). We reverse because a strong comment by a trial court is not tantamount to a ruling on the merits or a court order.

## BACKGROUND

The parties do not dispute the facts material to the instant appeal. The U.S. Department of the Army ("the Army") awarded a contract to Tech Systems, Inc. ("TSI") for "logistics support services" at the Schofield Barracks in Hawai'i. *Id.* at 87 (citation omitted). Dellew filed a post-award bid protest against the Government in the Court of Federal Claims, alleging that the Army improperly awarded TSI a contract because (1) TSI did not accept a material term of the request for proposals when it refused to cap its proposed general and administrative rate, and (2) the contract awarded varied materially from TSI's proposal. J.A. 53–56. Dellew also argued that the

Army failed to perform an adequate cost realism analysis before awarding the contract to TSI.[1]  J.A. 56–57.

After the Government filed the administrative record and the parties briefed the merits, the Court of Federal Claims held oral argument. *Dellew II*, 127 Fed. Cl. at 87. During oral argument, the Court of Federal Claims provided "hint[s]" about its views favorable to Dellew on the merits, J.A. 65; *see* J.A. 70–71 (discussing cost realism), 79 (discussing the general and administrative rate), 112–13 (discussing change in material terms), and stated that it had drafted an opinion, J.A. 143–44.  The Court of Federal Claims also repeatedly expressed its belief that corrective action would be appropriate.[2]  J.A. 126 ("I also would strongly suggest to the Army that they think about taking corrective action . . . ."), 128 ("[A] corrective action should be taken in this case . . . ."), 137 (similar), 139 (similar), 145–46 (similar).  Indeed, the Court of Federal

---

[1]   A cost realism analysis requires the Government to

> independently review[] and evaluat[e] specific elements of each offeror's proposed cost estimate to determine whether the estimated proposed cost elements are realistic for the work to be performed; reflect a clear understanding of the requirements; and are consistent with the unique methods of performance and materials described in the offeror's technical proposal.

48 C.F.R. § 15.404-1(d)(1) (2015).

[2]   Although not defined by statute or regulation, "corrective action" in the bid protest context generally means "agency action, usually taken after a protest has been initiated, to correct a perceived prior error in the procurement process, or, in the absence of error, to act to improve the competitive process." Appellant's Br. 2 n.1.

Claims encouraged the Army to "tak[e] corrective action now" so that it could avoid issuing "a needless ruling." J.A. 126.  The Court of Federal Claims set a schedule for the parties to provide a joint status report approximately ten days after the hearing, J.A. 152, 156–57, and explicitly agreed not to issue a decision until it received the report, J.A. 153.  The Court of Federal Claims also left open the possibility of additional briefing.  J.A. 68–69, 126.

In the Joint Status Report, the Government announced that the Army had determined that certain changes in conditions had occurred, resulting in a decrease in the contract value and requiring an amendment to the solicitation.  J.A. 163.  As a result of these changed conditions, "as well as the discussions held at oral argument . . . , the Army determined to take corrective action." J.A. 163.  The Army subsequently terminated the contract with TSI, and the Government filed a motion to dismiss Dellew's protest as moot in light of the corrective action.

The Court of Federal Claims granted the Motion and dismissed Dellew's action.  *Dellew Corp. v. United States* (*Dellew I*), 124 Fed. Cl. 429, 432–33 (2015).  In dismissing the action, the Court of Federal Claims declined Dellew's invitation to "issue findings of fact and conclusions of law that [Dellew] is a 'prevailing party'" because doing so would require the Court of Federal Claims to "issue an advisory opinion."  *Id.* at 432 n.2.  Notwithstanding mootness, the Court of Federal Claims determined that it retained jurisdiction over the action.  *Id.* at 432.

Dellew subsequently sought attorney fees and costs from the Government under the EAJA, and the Court of Federal Claims awarded Dellew a total of $79,456.76 in fees and costs.  *See Dellew II*, 127 Fed. Cl. at 101.  Relevant here, the Court of Federal Claims held that it made "numerous substantive comments during oral argument regarding the merits," *id.* at 92, that "carried a sufficient

judicial imprimatur to materially alter the relationship between [Dellew] and [the Government] such that [Dellew] qualifies as a prevailing party under the EAJA," *id.* at 89. After surveying the relevant authorities, *id.* at 89–92, the Court of Federal Claims articulated four grounds for its decision, *id.* at 92–94. First, it explained that, at oral argument, it "clearly stated its view that" the Government would lose on the merits and "that it therefore intended to rule in Dellew's favor with respect to th[e] issue[s]." *Id.* at 92. Second, it stated that it "made clear its view that the Army should take corrective action." *Id.* at 93. Third, it determined that the Army's corrective action was not voluntary. *Id.* at 94. Finally, it explained that its comments were made after the parties briefed the case and after it had drafted (though not issued) a written decision. *Id.* Taken together, the Court of Federal Claims held that the Government knew "how it intended to rule" and, thus, found it appropriate to confer prevailing party status on Dellew. *Id.* at 92.

The instant appeal followed. We possess subject matter jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

## I. Standard of Review

We generally review the award of attorney fees and costs under the EAJA for an abuse of discretion. *See Int'l Custom Prods., Inc. v. United States*, 843 F.3d 1355, 1358 (Fed. Cir. 2016). However, "[t]he question of whether a party qualifies as a 'prevailing party' under the EAJA is a question of law" that we "review de novo." *Rice Servs., Ltd. v. United States*, 405 F.3d 1017, 1021 (Fed. Cir. 2005) (citation omitted).

## II. The Court of Federal Claims Improperly Awarded Attorney Fees and Costs to Dellew Under the EAJA

### A. Legal Framework

"In the United States, parties are ordinarily required to bear their own attorney[] fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001). Described as the "American Rule," that practice proscribes an award of attorney fees unless otherwise provided by statute. *Id.* Absent a waiver of sovereign immunity, a party may not recover attorney fees in suits against the Government. *See Chiu v. United States*, 948 F.2d 711, 714 (Fed. Cir. 1991).

The EAJA waives the sovereign immunity of the United States to enable certain parties to seek attorney fees and costs against the Government under certain circumstances. *See Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1385–86 (Fed. Cir. 1983). The EAJA provides that

> a court shall award to *a prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The appeal hinges on whether Dellew meets the definition of "prevailing party" under the EAJA.

Neither a statute nor a regulation defines "prevailing party" for EAJA purposes. However, the Supreme Court has held that "prevailing party," as used in other statutes, means a party that obtains a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604 (internal quotation marks and citation omitted).

The Supreme Court also explained that the change in the parties' legal relationship must have a certain "judicial imprimatur," *id.* at 605, such as an "enforceable judgment[] on the merits" or a "court-ordered consent decree[]," *id.* at 604 (citation omitted). It further held that a prevailing party does not include a party who obtained relief through "a defendant's voluntary change in conduct." *Id.* at 605. We extended these principles to the EAJA, *see Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1377–79 (Fed. Cir. 2002), and later explained that the *Buckhannon* "threshold can also be met by other court action 'equivalent' to a judgment on the merits or a court-ordered consent decree," as long as "it carries sufficient judicial imprimatur to materially change the legal relationship of the parties," *Rice*, 405 F.3d at 1026.

## B. Dellew Is Not a Prevailing Party Under the EAJA

The Government contends that the Court of Federal Claims committed three errors in determining that Dellew qualifies as a prevailing party under the EAJA. *See* Appellant's Br. 16–29. We agree with each of the Government's arguments and address them in turn.

### 1. The Government Voluntarily Took Corrective Action

The first argument concerns the nature of the Government's corrective action. The Court of Federal Claims held that "the Army did not voluntarily decide to take corrective action" because "[i]t only did so following . . . the [G]overnment's realization that the court was not swayed by its argument" and otherwise "understood how the court intended to rule." *Dellew II*, 127 Fed. Cl. at 94, 95. The Government argues that, "[b]ecause the Army acted without any corresponding court order requiring such action," the Army voluntarily took corrective action such that the Court of Federal Claims could not have made the requisite change in the legal relationship between the parties. Appellant's Br. 17; *see id.* at 17–19.

Precedent firmly weighs in the Government's favor. It is undisputed here that the Government took corrective action before the Court of Federal Claims issued a written or oral *ruling* on the merits. *See Dellew II*, 127 Fed. Cl. at 92 ("In the case at bar, the court *did not* issue a written opinion on the merits. *Nor* did the court issue a consent decree based on an agreement between the parties. The court did, however, make numerous substantive comments during oral argument regarding the merits of the case and how it *intended* to rule . . . ." (emphases added)). Irrespective of the Court of Federal Claims's expectations about a future ruling or its impressions as to the Government's motivation for taking the corrective action, an agency acts voluntarily if it takes corrective action before the Court of Federal Claims provides a written or oral ruling on the merits that changes the parties' legal relationship. *See Rice*, 405 F.3d at 1027 (explaining that an agency acts "voluntarily" if it undertakes "remedial action before any rulings by the Court of Federal Claims"). Voluntary action cannot provide a sufficient basis for a court to confer prevailing status on a party. *See Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change."). To hold otherwise would reanimate the catalyst theory that the Supreme Court rejected in *Buckhannon*. *See id.* at 601, 605 (explaining that the "catalyst theory . . . posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" and rejecting that theory as inconsistent with precedent).

2. The Court of Federal Claims's Comments Lacked Sufficient Judicial Imprimatur to Materially Change the Legal Relationship of the Parties

The second argument concerns the substance of the comments that the Court of Federal Claims made during

the hearing. Because it stated its intent "to rule in Dellew's favor" and emphasized that "the Army should take corrective action," the Court of Federal Claims determined that its comments carried a sufficient judicial imprimatur to change the parties' legal relationship. *Dellew II*, 127 Fed. Cl. at 92, 93; *see id.* at 92–94. The Government argues that the Court of Federal Claims's comments did not carry a sufficient judicial imprimatur to materially change the legal relationship of the parties because they did not constitute "court-ordered relief." Appellant's Br. 19 (capitalization omitted); *see id.* at 19–22. Without the requisite imprimatur, the Government alleges that Dellew does not constitute a prevailing party under the EAJA. *See id.* at 19–22.

Our decision in *Brickwood* firmly resolves this aspect of the prevailing party question. There, we determined that comments about the merits made by the Court of Federal Claims during a hearing did not constitute sufficient grounds upon which to confer prevailing party status pursuant to the EAJA. *See* 288 F.3d at 1380–81. Absent an "oral judgment," *id.* at 1381, we held that "the cited comments are clearly not sufficient to establish a judicial imprimatur and they do not constitute a 'court-ordered change in the legal relationship' of the parties as *Buckhannon* requires," *id.* at 1380. Here, the Court of Federal Claims at most described how it "intended" to rule. *Dellew II*, 127 Fed. Cl. at 92. Indeed, the Court of Federal Claims encouraged, but did not require, the Army to take particular action. *See, e.g.*, J.A. 126 ("I also would strongly suggest to the Army that they think about taking corrective action . . . ."); *see also* J.A. 145, 147 (using "if" and "when" to describe the scope of any potential Army corrective action). Moreover, the Court of Federal Claims offered the Government an opportunity for further briefing, leaving open how the case would proceed, and it explicitly postponed a ruling pending receipt of the Joint Status Report. *See, e.g.*, J.A. 68–69, 150, 153. The Court

of Federal Claims's comments as a whole demonstrate that it did not *require* the Government to act in any manner; instead, it *offered* the Government an opportunity to take whatever corrective action it believed might be appropriate. Without more, the Court of Federal Claims's comments did not carry a sufficient judicial imprimatur to change the legal relationship between the parties.

Apart from conflicting with precedent, the Court of Federal Claims adopted an unworkable standard that equates a non-binding oral comment with a ruling. The Court of Federal Claims knows how to rule orally when the circumstances so require. *See, e.g.*, *Orion Tech., Inc. v. United States*, 101 Fed. Cl. 492, 493 (2011) (stating that its decision "explains in more detail the oral rulings made by the court" in a prior hearing). In the absence of an oral ruling, experience teaches us that comments made from the bench do not always match the content of a later written opinion. For that reason, unless the issue on appeal concerns an oral ruling, we generally "rely on the court's written opinion rather than its oral statement during a hearing." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir. 2004). To hold otherwise would require parties to divine the presiding court's actual holding from the often messy entrails of spontaneous comments. That kind of divination has no support in a legal system which values predictability as a pillar of the rule of law.

### 3. The Court of Federal Claims Failed to Follow Relevant Precedent

The final argument concerns the legal authority relied upon by the Court of Federal Claims. Throughout its decision, the Court of Federal Claims relied substantially upon its decision in *Universal Fidelity LP v. United States*, 70 Fed. Cl. 310 (2006). *See Dellew II*, 127 Fed. Cl. at 91–92, 94–95. In *Universal Fidelity*, the Court of Federal Claims held that a preliminary order intending to

enjoin a solicitation carried a sufficient judicial imprimatur to materially change the parties' legal relationship and, thus, to confer prevailing party status on the plaintiff. *See* 70 Fed. Cl. at 314–16. The Government avers that the Court of Federal Claims improperly relied upon *Universal Fidelity* and failed to follow our binding precedent. *See* Appellant's Br. 22–26.

The Court of Federal Claims erred in relying upon *Universal Fidelity* for two reasons. First, the Court of Federal Claims gave greater weight to *Universal Fidelity* than *Buckhannon*, *Rice*, and *Brickwood*. *See Dellew II*, 127 Fed. Cl. at 94–95 ("[T]he court concludes that there is good cause to extend the holding in *Universal Fidelity* [], which dealt with a written order, to the oral comments made in this case. In both cases: (1) the matter was fully briefed at the time the statements were made, (2) the court arrived at legal conclusions after considering the merits of the parties' positions, (3) the parties were made aware of those legal conclusions, and (4) defendant took corrective action after having been made aware of the court's position."). We reaffirm a well-known principle that the Court of Federal Claims failed to follow here: the Court of Federal Claims must follow relevant decisions of the Supreme Court and the Federal Circuit, not the other way around.[3] *See Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow

---

[3] Of course, if precedent from the Supreme Court and our court does not answer the particular question presented, the Court of Federal Claims may rely upon its own decisions. Even then, "Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court." *W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994) (citations omitted).

the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims." (citation omitted)). Second, even if it had the same authoritative weight as decisions of superior courts, *Universal Fidelity* is distinguishable. Unlike here, the Court of Federal Claims in *Universal Fidelity* reduced its views of the merits to an order. *See* 70 Fed. Cl. at 311. For these reasons, the Court of Federal Claims improperly relied upon *Universal Fidelity* to find that Dellew qualified as a prevailing party under the EAJA.[4]

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, the Opinion and Order of the U.S. Court of Federal Claims awarding attorney fees and costs to Dellew under the EAJA is

**REVERSED**

COSTS

Costs to the Government.

---

[4] Throughout its response brief, Dellew argues that the court should follow, inter alia, the Seventh Circuit's decision in *Palmetto Properties, Inc. v. County of DuPage*. *See* Appellee's Br. 18–55 (discussing 375 F.3d 542 (7th Cir. 2004)). The Seventh Circuit's decision does not control here because our decisions in *Rice* and *Brickwood* are dispositive, and we must follow them. *See Deckers Corp. v. United States*, 752 F.3d 949, 959 (Fed. Cir. 2014) ("[A] later panel is bound by the determinations of a prior panel, unless relieved of that obligation by an en banc order of the court or a decision of the Supreme Court.").