**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-1155

———————

HEARTLAND PAYMENT SYSTEMS, LLC

v.

ROBERT MICHAEL VOLRATH,

Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No: 2:17-cv-05323-KSH-CLW)
District Judge: Honorable Katherine S. Hayden

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 16, 2018

Before: GREENAWAY, JR., BIBAS, and FUENTES, *Circuit Judges*.

(Filed: February 1, 2019)

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Breaking contracts has consequences. Michael Volrath signed a contract with his former employer that contained confidentiality and non-solicitation clauses. He has repeatedly breached those clauses.

The District Court enjoined further breaches. It found that his former employer will likely succeed on the merits and would otherwise suffer irreparable harm. Given Volrath's repeated breaches, the Court's findings were not clearly erroneous. And the Court applied the correct post-employment conditions and legal standards. So it did not abuse its discretion. We will affirm.

## I. BACKGROUND

Heartland Payment Systems provides credit- and debit-card payment equipment and services. Heartland makes money by enrolling merchants and charging a fee for each payment it processes for them. And its employees take home a share of its profits in commissions even after they leave Heartland.

Volrath worked at Heartland for ten years. He solicited merchants and learned much confidential information. During his job, he signed two types of agreements restricting what he could do after leaving his job. When he left Heartland, he breached some of those post-employment conditions.

### A. Manager agreement

As he rose through the ranks, Volrath signed a manager agreement that laid out various conditions of his job. It also restricted what he could do after he left Heartland. Two post-employment conditions are at issue.

First, the manager agreement has a confidentiality clause. When Volrath left the company, he had to return Heartland's confidential information or destroy it. And he could not use or disclose it to anyone.

Second, the agreement has a non-solicitation clause. When Volrath left, he could not poach Heartland's merchants or employees. The clause broadly governs *all* of Heartland's merchants: it forbids soliciting "any [Heartland] Merchant or other party having a contractual or business relationship with [Heartland]" for one year. App. 32 ¶9(a). The clause also has a narrower five-year ban on soliciting those merchants that Volrath signed. The non-solicitation clause bans soliciting or recruiting Heartland's employees for two years as well.

## B. Commission agreements

While working at Heartland, Volrath also signed at least twenty-two commission agreements—all of which he signed after the manager agreement. These agreements let employees sell their rights to future commission payments in exchange for a lump-sum payment.

Each commission agreement also contains a non-solicitation clause equal in scope to the narrow ban in the manager agreement: for several years, Volrath may not solicit Heartland's merchants that he signed. True, the clause did change once over the years, and the earlier version applied to "any merchant having a Merchant Agreement with [Heartland]." App. 99 ¶4. And this clause could be read more broadly to bar soliciting any of Heartland's merchants. But Volrath concedes that the merchants at issue in the earlier version are only those that he signed. Appellant's Br. 8 & n.2. And the language he quotes that purportedly

3

broadens this reach is found only in the manager agreement, not the commission agreements. The old and new versions of the commission agreement are thus identical in scope.

So the commission agreements are narrower than the manager agreement. They do not ban soliciting *all* Heartland merchants. Nor do they ban soliciting Heartland employees. And unlike the manager agreement's strict limits on using *all* confidential information, the commission agreements' confidentiality clause reaches only the terms of the agreements.

Both the commission agreements and management agreement also contain a boilerplate merger clause. That clause provides that each agreement "comprises the entire agreement between the parties hereto *with respect to the subject matter hereof* and supersedes all prior and contemporaneous agreements and understandings." App. 100 ¶7 (emphasis added); *accord* App. 34.

## C. Contractual violations

After ten years, Volrath left Heartland to work for a direct competitor, performing the same duties. He immediately began violating the manager agreement's post-employment conditions.

As Volrath admitted, he breached the confidentiality clause. Just hours after resigning, he emailed confidential information to the competitor's employees, some of whom were his own children. He also testified that he had a list of Heartland's prospective merchants sent to his personal email account. And he solicited merchants on that list for the competitor. He admits that these emails contained confidential information. Yet he accessed the information ten to fifteen times after resigning.

4

He also solicited Heartland's merchants. He persuaded a restaurant owner to switch from Heartland to the competitor. And he contacted two other executives to steer their business away from Heartland to his new employer. All three merchants had contractual or business relationships with Heartland.

And Volrath allegedly tried to poach a Heartland employee. The employee testified that Volrath described the competitor's compensation plan and tried to recruit him. For all these breaches, Heartland sued.

The District Court granted Heartland a preliminary injunction. Volrath now challenges that order. The District Court had jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1). *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

Three standards govern our review of preliminary injunctions. We review legal conclusions *de novo*; findings of fact for clear error; and the ultimate decision to grant or deny relief for abuse of discretion. *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013).

## II. THE DISTRICT COURT CORRECTLY GRANTED THE PRELIMINARY INJUNCTION

To get a preliminary injunction, Heartland had to show (1) a likelihood of success on the merits; (2) a greater-than-even chance of irreparable harm without a preliminary injunction; (3) a favorable balance of equities; and (4) the public interest favoring the injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). Only the first two prongs are in dispute. Because the District Court's findings are not clearly erroneous, we find no abuse of discretion.

**A. Heartland showed a likelihood of success on the merits**

Volrath argues that the District Court erred by applying the non-solicitation clause from the manager agreement rather than the one from the latest commission agreement. And because he did not violate this commission agreement, he argues, the Court erred in finding that Heartland was likely to succeed on the merits. But the manager agreement governs, and he breached that agreement's non-solicitation clause as well as its confidentiality clause.

While Volrath does not dispute that the manager agreement's confidentiality clause governs, he does argue that its non-soliciation clause does not. He contends that, because of the merger clause, the non-solicitation clause in the commission agreement trumps the one in the manager agreement.

The District Court disagreed. It found that "the subject matter[s]" of the two agreements were so different that the commission agreement's non-solicitation clause only supplemented that of the manager agreement rather than supplanting it. *Heartland Payment Sys., LLC v. Volrath*, No. 2:17-5323-KSH-CLW, 2017 WL 6803519, at *5 (D.N.J. Dec. 31, 2017). The Court read the commission agreement narrowly to cover a single subject matter: "the purchase of partial commissions related to merchant accounts." *Id.* at *5. That reading, however, is too limited. The "subject matter" in the merger clause refers to all terms in the very contract that the clause integrates.

But the management agreement still controls. The manager agreement's non-solicitation clause broadly governs three different subjects: (1) all Heartland's merchants;

6

(2) Heartland's merchants that Volrath signed; and (3) Heartland's employees. The commission agreement does not reach the first or third subjects; it forbids soliciting only Heartland merchants that compensated Volrath. Because there is no overlapping subject-matter of soliciting all Heartland's merchants and employees, the manager agreement continues to govern those two subjects. And the Court correctly found "ample evidence" that Volrath breached those two terms. *Id.* at *7.

Volrath does not dispute any of the other requirements for showing a likelihood of success on the merits. So the District Court correctly found for Heartland on this point.

**B. Heartland showed that it was likely to suffer irreparable harm**

Volrath next argues that the District Court applied the wrong legal standard to find a likelihood of irreparable harm. He also argues that this finding was clearly erroneous. We disagree on both counts.

1. *The District Court applied the right legal standard.* Volrath argues that the District Court applied the wrong legal standard by requiring Heartland to show only an "imminent possibility" of irreparable harm. Appellant's Br. 23. The correct standard requires the moving party to show that it would "more likely than not … suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179.

But the District Court used the right standard in its opinion: "Heartland must establish … 'that [it] is *likely* to suffer irreparable harm in the absence of preliminary relief.'" *Heartland Payment Sys.*, 2017 WL 6803519, at *5 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (emphasis added). The opinion never mentioned an "imminent possibility." The Court used that phrase several times at oral argument, but it never held

7

that was the standard. And we should not give every stray inquiry at oral argument the same weight as a written opinion. *See Dellew Corp. v. United States*, 855 F.3d 1375, 1381 (Fed. Cir. 2017). So the Court applied the right standard.

2. *The District Court did not err in finding a likelihood of irreparable harm.* Finally, Volrath argues that the District Court clearly erred in finding that Heartland would likely suffer irreparable harm. It did not err.

The Court again analyzed pertinent caselaw and relied on the record to grant the injunction. Rightly so: the risk of irreparable harm here was far from speculative. Volrath had already breached the confidentiality and non-solicitation clauses many times. Those breaches were immediate and serious, so the Court correctly applied "a strong presumption that he will breach again." *Heartland Payment Sys.*, 2017 WL 6803519, at *8. And ample evidence showed that continued breaches could cause irreparable, incalculable harm to Heartland, including loss of goodwill and damage to its reputation.

So the Court held that "[t]he evidence Heartland adduced establishes that the 'concrete risk' and 'changed loyalties' about which Third Circuit cases have cautioned are in play." *Id.* That was not error, let alone clear error.

\* \* \* \* \*

The manager agreement's confidentiality and non-solicitation clauses govern, and Volrath breached them. And the District Court thoroughly considered all the relevant cases and facts in the record in finding that a preliminary injunction is warranted. It neither clearly erred nor abused its discretion. So we will affirm.